In re ROSCAR STEEL SCRAP AND
METALS CORPORATION,
Bankrupt.

Sidney DANZIGER, Trustee in Bankrupt-
cy of Roscar Steel Scrap and Metals
Corporation, Plaintiff/Appellee,

v.

BANCO URQUIJO S. A.,
Defendant/Appellant.

Nos. 80 CIV. 4779 (CBM), 77 B
410 (JJG).

United States District Court,
S. D. New York.

May 28, 1981.

630

Milbank, Tweed, Hadley & McCloy, New York City (Barry G. Radick, David C. L. Frauman, Steven A. Meyerowitz, New York City, of counsel), for defendant/appellant.

Goldstein & Zucker, New York City, for plaintiff/appellee.

## BANKRUPTCY OPINION

MOTLEY, District Judge.

This is an appeal from the order of the Bankruptcy Court, John J. Galgay, Bankruptcy Judge, dated June 18, 1980, denying the motion of defendant, Banco Urquijo, S.A. (Banco Urquijo), to dismiss Counts 2 and 3 of the complaint filed by Sidney Danziger, Trustee in Bankruptcy (Trustee) of Roscar Steel Scrap and Metals Corporation (Roscar). Banco Urquijo contends that the decision of the Bankruptcy Court should be reversed, as a matter of law, because Counts 2 and 3 of the complaint fail to state claims upon which relief may be granted. For the reasons discussed below, the decision of Judge Galgay is affirmed.

Roscar is a New York corporation. It filed a voluntary petition in bankruptcy in the Southern District of New York on February 25, 1977. Roscar was a subsidiary of a Spanish corporation called Rosal S.A. de Carbones (Rosal) which owned a controlling shareholder interest in Roscar. Banco Urquijo, a Spanish banking corporation licensed to do business in New York, was a creditor of both Roscar and Rosal.

This appeal arises from an adversary proceeding brought by Roscar's Trustee in Bankruptcy against Banco Urquijo. The Trustee's complaint, fairly read, challenges a series of transfers of assets between Roscar and Rosal and members of the family that allegedly controls Rosal. The Trustee

alleges that these transfers constitute preferential transfers and fraudulent conveyances under sections 60, 67, and 70 of the Bankruptcy Act, 11 U.S.C. §§ 96, 107, and 110.

Count 1 of the complaint alleges that on or about December 31, 1976, January 7, 1977, January 17, 1977, and January 19, 1977, Banco Urquijo applied certain sums of money from Roscar's account with Banco Urquijo in part payment of Roscar's indebtedness to Banco Urquijo. It is alleged that Roscar was insolvent and that Banco Urquijo had reasonable cause to believe that Roscar was insolvent at the time these transfers took place. The Trustee claims that the application of these funds, aggregating $130,150.03, by Banco Urquijo constituted preferences to Banco Urquijo under the Bankruptcy Act. The Trustee seeks to void these allegedly preferential payments and recover the amount of the payments from Banco Urquijo. The Bankruptcy Court did not address the validity of these alleged preferential payments since Banco Urquijo did not move to dismiss Count 1 of the complaint.

Counts 2 and 3 of the complaint, read as a whole, allege a sophisticated scheme by which Roscar transferred a number of assets to its parent Rosal and members of the Rosal family for the ultimate benefit of Banco Urquijo. Specifically, Count 2 of the complaint alleges that Banco Urquijo assisted and induced Rosal to cause Roscar to transfer Roscar's money and other assets to or for the benefit of Rosal and members of its controlling family. The alleged transfers included the following:

1. a $293.364 and a $355,000 payment by Roscar to Rosal;

2. the transfer by Roscar to or for the benefit of Rosal of 9,083 tons of scrap metal having the value of approximately $820,000;

3. a payment to Joaquin Maldonado for obligations owed him by Clara Sanchez Maldonado, the mother of Rosal's principal owner;

4. the sale of a Rosal subsidiary, without adequate consideration, to Juan Antonio Arbeloa Antonanzas; and

5. a $315,000 payment by Roscar to Francisco Guridi for no or inadequate consideration.

The complaint also alleges that, at the time of these transfers, Banco Urquijo was a creditor of both Roscar and Rosal and was aware of the fact that Roscar and Rosal were insolvent. The Trustee alleges that sometime in November or December, 1976, Banco Urquijo hired a bookkeeper who had formerly been employed by Rosal. Among the bookkeeper's duties at Rosal was that of keeping the accounting records of Roscar.

The complaint alleges that on or about February 7, 1977, shortly before Roscar filed its petition in bankruptcy in this court, Rosal became the subject of Suspension of Payment Proceedings in the Court of First Instance in Madrid, Spain, a proceeding allegedly analogous to an insolvency proceeding under Chapter XI of the Bankruptcy Act. Both Roscar and Banco Urquijo filed proofs of claim in the Rosal insolvency proceeding. Banco Urquijo was Rosal's major creditor in that proceeding. Immediately prior to February 7, 1977, Rosal was allegedly indebted to Banco Urquijo in an amount in excess of $5,000,000. Certain members of the Rosal family were also indebted to Banco Urquijo.

Finally, the Trustee alleges that these transactions constituted fraudulent conveyances under the Bankruptcy Act and the laws of the State of New York. He claims damages in the amount of $1,783,364. The Trustee asserts in his appellate brief that he will prove, at the trial of this action, that Banco Urquijo indirectly benefited from the payments of Roscar's funds and assets to Rosal and others.

In Count 3 of the complaint the Trustee alleges that he filed a proof of claim on behalf of Roscar against Rosal in the Spanish bankruptcy proceeding in the amount of $2,699,573, plus any sums in excess of $820,000 for which Rosal was indebted to Roscar for the shipment of scrap metal. He further alleges that his claim against Rosal was rejected by a panel of three members which included a senior officer of Banco

Urquijo, Joaquin Lluch Rovira. The Trustee claims that Lluch Rovira did not act impartially in influencing the panel to make its determination to deny the claim of Roscar and approve the claim of Banco Urquijo. The Trustee concludes that the adverse determination resulted in a loss to Roscar and a benefit to Rosal and thereby to Banco Urquijo which had also filed a claim against Rosal. He claims damages in the amount of $2,699,573.

Bankruptcy Judge Galgay denied Banco Urquijo's motion to dismiss Count 2, in part, and Count 3 of the complaint, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief may be granted. He found that the Trustee's claim in Count 2 was, essentially, that Banco Urquijo induced Rosal to secure the transfers from its subsidiary for Banco Urquijo's own ultimate benefit, and that Banco Urquijo, as an indirect beneficiary, would be liable under sections 60 and 67 of the Bankruptcy Act and state law for the return of the property it indirectly received, in the same manner as it would be liable as a direct transferee. Judge Galgay stated that although the Trustee requested an award of damages, it was clear that the gravamen of the complaint was that the transfers be voided for the benefit of the Roscar estate. Judge Galgay's reading of the complaint suggested that Banco Urquijo could have benefited from the transfers in a couple of ways. First, the swelling of Rosal's assets which resulted from the transfers would increase Banco Urquijo's pro rata share of distribution in the Spanish proceeding. Second, funds received from Roscar may have been subject to offset by Banco Urquijo to directly reduce the debt owed by Rosal to the bank. Judge Galgay then ruled, however, that the extent to which Banco Urquijo benefitted from the transfers would have to be determined through pretrial discovery.

Judge Galgay also ruled that the two cash transfers and the shipment of scrap metal from Roscar to Rosal could be found to be preferential transfers, and that the payments to Francisco Guridi and to Joaquin Maldonado could be found to be fraudulent conveyances. He also held, however,

that the Trustee's allegation as to the sale of the subsidiary company was insufficient to state a claim of preference or fraudulent conveyance because it failed to allege how the particular sale benefitted Banco Urquijo or was a detriment to Roscar. He, therefore, granted the motion to dismiss Count 2 in part.

The reasoning underlying Judge Galgay's decision not to dismiss Count 3 of the complaint is less clear. Judge Galgay stated that Count 3 alleges that Banco Urquijo will receive a greater distribution from the Rosal estate because of the disallowance of Roscar's claim and that the rejection of Roscar's claim was ruled on by a senior official of Banco Urquijo. He suggested that he might not be willing to be bound by the Spanish court's determination. He noted that an American court is not obliged to follow a decision of a foreign court that is repugnant to our own law. He noted, additionally, that causes of action based on fraudulent conveyances and preferential transfers are derived from the bankruptcy statutes of the United States and the various states and that those statutes would be applicable in the instant action. He noted that it could not be assumed that the Spanish panel considered the elements that make out these causes of action under the Bankruptcy Act or the New York Debtor and Creditor Law. It is not clear whether Judge Galgay considered the Trustee's claim in Count 3 to be that the Spanish panel's decision to disallow Roscar's claim was invalid because it was not impartially rendered and thus repugnant to our public policy or law, or that the proceeding in Spain would not be *res judicata* or otherwise binding because the same issues to be litigated in the instant action were not litigated in the Spanish proceeding.

Banco Urquijo contends that Count 2 is fatally deficient because the Trustee does not and cannot allege an essential element of a fraudulent conveyance or preferential transfer claim—that Banco Urquijo was a transferee of the assets. It claims that the Bankruptcy Court erred when it disregarded the Trustee's failure to allege this ele-

ment of the claim and itself supplied that allegation which is essential to any recovery by the Trustee. Banco Urquijo also notes that the Trustee's allegation that Banco Urquijo "assisted and induced" Rosal to cause Roscar to make the transfers does not state a cause of action since a creditor has no right in tort to damages against a debtor who transfers away his property or against third persons who aid or participate in the debtor's wrongful transfers.

It is true that the Trustee's complaint does not present the set of facts which typically constitutes a preferential transfer under the Bankruptcy Act. While the Bankruptcy Court must apply the provisions of the Act carefully to the factual situation " . . . we do not read these statutory words with the ease of a computer. There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." *Bank of Marin v. England*, 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966). The Bankruptcy Court must be mindful of the Supreme Court's directive that when a fraudulent or preferential scheme is involved the courts must be vigilant. "No matter how technically legal each step in that scheme may have been, once its basic nature was uncovered it was the duty of the bankruptcy court in the exercise or its equity jurisdiction to undo it." *Pepper v. Litton*, 308 U.S. 295, 312, 60 S.Ct. 238, 248, 84 L.Ed. 281 (1939). *See also Jackson v. Star Sprinkler Corp. of Florida*, 575 F.2d 1223, 1226 (8th Cir. 1978). It is with these principles in mind that this court affirms the decision of Judge Galgay to deny Banco Urquijo's motion to dismiss the complaint.

■ This court holds that the Bankruptcy court did not err in its decision that the complaint states the elements of preferential transfers as to the two payments of money by Roscar to Rosal and by the shipment of valuable scrap metal by Roscar to Rosal. A preference is any transfer of a bankrupt's property within the prescribed period of time while the bankrupt is insolvent if its effect is to enable one of the creditors to obtain a greater percentage of

his debt than other creditors of the same class. *See* 11 U.S.C. § 96(a)(1). Bankruptcy courts have traditionally focused on the purpose and effect of the transaction at issue irrespective of the devious manner in which it was accomplished. "It [is] immaterial that the transfer was made to one or more persons other than the creditor as long as the object was to benefit the creditor and the effect was to evade the intent and purpose of the Bankruptcy Act." 4 Collier, *Bankruptcy* ¶ 547.09, at 547–33 to 547–35 (15th Ed.). The Supreme Court recognized that preferential transfers may be made indirectly in *National Bank of Newport v. National Herkimer County Bank*, 225 U.S. 178, 184, 32 S.Ct. 633, 635, 56 L.Ed. 1042 (1912):

> To constitute a preference, it is not necessary that the transfer be made directly to the creditor. It may be made to another, for his benefit. If the bankrupt has made a transfer of his property, the effect of which is to enable one of his creditors to obtain a greater percentage of his debt than another creditor of the same class, circuity of arrangement will not avail to save it.

*See also Miller v. Wells Fargo Bank International Corp.*, 406 F.Supp. 452, 463 n.2 (S.D.N.Y.1975), *aff'd*, 540 F.2d 548 (2d Cir. 1976).

■ Although the complaint does not expressly allege that Banco Urquijo benefitted from the transfers, it does allege all of the elements of a scheme the effect of which would enable Banco Urquijo to obtain a greater percentage of the debt owed it by Roscar than other creditors of Roscar. Count 2 of the complaint alleges that Banco Urquijo induced Rosal to cause Roscar to transfer Roscar's assets to Rosal within 4 months prior to Roscar's filing of its bankruptcy. The complaint also alleges that Banco Urquijo, as the major creditor of Rosal, then filed a claim in Rosal's insolvency proceeding to receive part of the distribution from the Rosal estate. The complaint only fails to spell out the Trustee's theory as to how Banco Urquijo ultimately received a greater percentage of Roscar's assets by way of the transfers to Rosal and

the distribution of Rosal's estate in Spain than it would have received had the assets remained in Roscar's estate and been distributed through the Roscar bankruptcy proceeding in this country. The complaint alleges enough facts to show that, if proved, the Trustee would be entitled to relief and, therefore, enough to withstand a motion to dismiss for failure to state a claim upon which relief may be granted. *See Dioguardi v. Durning*, 139 F.2d 774 (2d Cir. 1944); *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).

■ Banco Urquijo is correct in its assertion that the Trustee may not succeed on a claim in tort for damages on the ground that Banco Urquijo assisted or induced Roscar wrongfully to transfer its property. Banco Urquijo is also right in asserting recovery under the Bankruptcy Act does not provide for a judgment against conspirators who assist in the transfer but do not receive the property in question. *Duell v. Brewer*, 92 F.2d 59, 60–61 (2d Cir. 1937); *Elliot v. Glushon*, 390 F.2d 514 (9th Cir. 1967); *Jackson v. Star Sprinkler Corp. of Florida*, 575 F.2d 1223, 1234 (8th Cir. 1978). However, the Bankruptcy Act does provide for recovery against a creditor who actually receives the benefit of the transfer. *Duell v. Brewer, supra*, 92 F.2d at 61; 3 Collier, *Bankruptcy* ¶ 60.58, at 1098.1 (14th ed.). Banco Urquijo, it is alleged, benefitted from the transfers by virtue of the increased distribution in the Rosal insolvency proceeding at which Banco Urquijo had the largest claim.

■ The Trustee's remedy under § 67 of the Bankruptcy Act is to have the preferential transfers declared void and to recover the property, rather than to hold the debtor or creditor liable for their wrongful acts. However, the Bankruptcy Court may award monetary recovery, in the amount of the value of the transferred property, when the property has been converted or has severely depreciated in value, or when, for some other reason, recovery *in specie* is impossible. *Elliot v. Glushon, supra*, 390 F.2d at 517; *Klein v. Tabatchnick*, 610 F.2d 1043, 1050 (2d Cir. 1979); 4 Collier, *Bankruptcy* ¶ 550.02, at 550–5 n.6 (15th ed.). It appears that it may no longer be possible to

return the property transferred by Roscar to Rosal since Rosal has undergone insolvency proceedings in Spain and its estate has been or is being distributed to its creditors. The Bankruptcy Court, therefore, would have the power to grant recovery to the Trustee for a proved preferential transfer in the form of a monetary award in the amount of the value of that portion of the transferred Roscar property which the evidence shows Banco Urquijo received by way of the distribution of Rosal's estate. *See Duell v. Brewer, supra*, 92 F.2d at 61.

■ The court further holds the Bankruptcy Court did not err in denying Banco Urquijo's motion to dismiss, in part, Count 2 of the complaint with respect to the payments by Roscar to Joaquin Maldonado and Francisco Guridi. Judge Galgay ruled that these two payments appeared to constitute fraudulent conveyances under the Bankruptcy Act because there was allegedly no fair consideration and because there was nothing in Banco Urquijo's answer explaining the transactions. Unlike a preference, which is a violation of the rule of equal distribution among all creditors, a fraudulent conveyance is a deceitful device through which the debtor seeks to secure an advantage for himself out of what in law should belong to his creditors and not to him. 4 Collier, *Bankruptcy* ¶ 547.02, at 547–14 (15th ed.). A fraudulent conveyance, however, may also be a preference if it works to give one of the creditors a greater percentage of his debt than other creditors of the same class. *See Irving Trust Co. v. Chase National Bank*, 65 F.2d 409 (2d Cir. 1933). The complaint alleges as to these two payments that certain members of the Rosal family were indebted to Banco Urquijo. The proof may show that these allegedly fraudulent conveyances may have also benefitted Banco Urquijo in the same manner as the cash payments and shipment of scrap metal discussed above.

■ Finally, the court holds that the Bankruptcy Judge did not err in denying Banco Urquijo's motion to dismiss Count 3 of the complaint. Judge Galgay construed Count 3 as alleging a cause of action for fraudulent conveyances and/or preferences and ruled that he may ultimately decide

that any determination by the Spanish bankruptcy court of those issues is not binding on him in this action if he finds certain facts to be true. His ruling appears to anticipate a defense by Banco Urquijo that the Trustee's claims in this action are barred by *res judicata*, having already been decided by the Spanish bankruptcy tribunal. This court agrees with defendant that Count 3 does not by itself allege all of the elements of a fraudulent conveyance or preference. Rather, Count 3 alleges only that the panel at Rosal's insolvency proceeding did not impartially decide to disallow Roscar's claim in favor of the claim filed by Banco Urquijo. Count 3, however, does allege additional facts which elaborate the scheme set forth in Counts 1 and 2 to execute preferential transfers and fraudulent conveyances for the benefit of Banco Urquijo. Accordingly, Count 3 of the complaint must be read together as alleged with Counts 1 and 2 to allege a claim against Banco Urquijo for recovery of the value of assets transferred from the debtor Roscar to its parent Rosal for the benefit of their creditor Banco Urquijo.

For these reasons, Judge Galgay's order of June 18, 1980 is affirmed.