In re CHICAGO MUSIC CORPORATION,
Debtor.

Edward LIMPERIS, Trustee of the
Estate of Chicago Music
Corporation, Plaintiff,

v.

Margie KOLACNY, Ladislav C. Kolacny,
Century Music Corporation, Inc., Debo-
rah Hartman, as Administratrix of the
Estate of Werner J. Hartman, Chicago
Music Corporation of Franklin Park,
Inc., Phillip E. Solzan, and State of Illi-
nois, Defendants.

Bankruptcy No. 79 B 39499.
Adv. No. 80 A 0458.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Jan. 5, 1984.

David N. Missner, Schwartz, Cooper, Kolb & Gaynor and James H. Wolf, Chicago, Ill., for various defendants.

Arthur D. Kessler, Chicago, Ill., for State of Illinois.

Richard J. Mason, Chicago, Ill., for trustee of estate of debtor.

## MEMORANDUM OPINION AND ORDER

EDWARD B. TOLES, Bankruptcy Judge.

This matter coming on to be heard upon the complaint to collect fraudulent transfers of property, pursuant to Section 548 of the Bankruptcy Code and Illinois Revised Statute Chapter 26 filed by the Trustee, EDWARD LIMPERIS [Trustee], represented by RICHARD J. MASON, of the law firm of LEVIT, MILLER & MASON, LTD., and the answers thereto of the Defendants, MARGIE KOLACNY, LADISLAV C. KOLACNY, CENTURY MUSIC CORPORATION, INC., represented by JAMES H. WOLF, of the law firm of HEDBERG, TOBIN, CORRIGAN & WOLF, and the Defendants, DEBORAH HARTMAN, Administratrix of the Estate of WERNER J. HARTMAN and CHICAGO MUSIC CORPORATION OF FRANKLIN PARK, INC., represented by DAVID N. MISSNER, of the law firm of SCHWARTZ, COOPER, KOLB & GAYNOR, and the Defendant, ILLINOIS DEPARTMENT OF REVENUE, represented by ARTHUR D. KESSLER, Assistant Attorney General, and

The Court having examined the pleadings filed in this matter, having heard testimony and received evidence, having received memoranda of law submitted by the parties in support of their respective positions, having heard the arguments of counsel, and the Court being fully advised in the premises;

The Court Finds:

1. The Debtor, CHICAGO MUSIC CORPORATION [Debtor], was engaged in the business of selling and installing stereo equipment and burglar alarms in Niles, Illinois. WERNER J. HARTMAN, now deceased [Hartman], was the sole shareholder and principal officer of the Debtor corporation and the Defendant, CHICAGO MUSIC CORPORATION OF FRANKLIN PARK located in Franklin Park, Illinois [Franklin Park Corporation]. On September 25, 1979, Hartman and the Defendants, MARGIE KOLACNY and LADISLAV C. KOLACNY [Kolacnys] closed the sale of assets of the Debtor corporation for the sum of $75,000.00, including office equipment, leasehold improvements and a non-competition agreement. The Kolacnys in October, 1979 formed a corporation known as CENTURY MUSIC CORPORATION [Century Corporation], which is also a defendant in this proceeding. At the closing held on September 25, 1979, Hartman executed and delivered to the Kolacnys a covenant not to compete in exchange for the sum of $55,000.00 to be deducted from the total sale price of $75,000.00. The sum of $15,000.00 was placed in an escrow account to ensure payment of state sales taxes, and on September 25, 1979, the Defendant, ILLINOIS DEPARTMENT OF REVENUE [State of Illinois], issued a bulk sales stop order to the Kolacnys for the sum of $15,000.00, due to a claim for sales taxes owed to the State of Illinois in the amount of $1,720.24.

2. On September 28, 1979, Hartman turned over the inventory of the Debtor corporation to the Des Plaines National Bank, which held a security interest in the Debtor's property in the amount of $32,000.00. On October 1, 1979, the Kolacnys paid to Hartman the sum of $5,000.00 representing the final payment on the purchase price of $75,000.00, and Hartman delivered the keys to the premises to the Kolacnys. On October 2, 1979, Hartman issued a letter to creditors of the Debtor corporation stating that the Debtor had ceased operating,

and that there were no unencumbered assets for distribution. On October 17, 1979, an involuntary petition for adjudication in bankruptcy under Chapter 7 of the Bankruptcy Code was filed by TOKEN DISTRIBUTORS, HARADA INDUSTRIES OF AMERICA and AFCO ELECTRONICS, pursuant to Section 303 of the Bankruptcy Code. On November 19, 1979, an order was entered adjudicating the Debtor in bankruptcy, and on January 2, 1980, EDWARD LIMPERIS was appointed as the Interim Trustee.

3. On March 31, 1980, the Trustee filed the instant ten-count adversary proceeding to recover property transferred and to avoid the lien of the State of Illinois. In summary, the ten counts may be described as follows:

*First*—against Mrs. Kolacny to recover the fair value of the assets sold to her for less than reasonably equivalent value in violation of 11 U.S.C. § 548;

*Second*—against Mrs. Kolacny to recover the fair value of the assets sold to her in violation of the Illinois Bulk Sales Law;

*Third*—against Kolacny and Century Music Corporation to recover the fair value of the assets sold to them for less than reasonably equivalent value in violation of 11 U.S.C. § 548;

*Fourth*—against Kolacny and Century Music Corporation to recover the fair value of the assets sold to them in violation of the Illinois Bulk Sales Law;

*Fifth*—against Hartman for wrongfully converting funds of the Debtor;

*Sixth*—against Hartman and the Franklin Park Corporation for not paying for goods sold and delivered to them by the Debtor;

*Seventh*—against Hartman and the Franklin Park Corporation to recover the fair value of the Debtor's assets transferred to them for less than reasonably equivalent value in violation of 11 U.S.C. § 548;

*Eighth*—against Hartman and the Franklin Park Corporation to recover the fair value of the Debtor's assets sold to them in violation of the Illinois Bulk Sales Law;

*Ninth*—against Phillip Solzan to turn over to the Trustee the $15,000 held by him in escrow for the Debtor; and

*Tenth*—against the Illinois Department of Revenue to invalidate its lien for unpaid sales tax on the $15,000 held by Phillip Solzan.

On April 22, 1980, the Kolacnys and Century Music Corporation filed their answer, and on April 30, 1980, Hartman and the Franklin Park Corporation filed an answer. On May 6, 1980, the State of Illinois filed its answer to the Trustee's complaint. On May 20, 1980, an order was entered requiring Hartman's attorney, PHILLIP SOLZAN [Solzan], to turn over to the Clerk of the Court the sum of $15,000.00 held in escrow from the sale of assets to the Kolacnys. By stipulation of the parties, on September 2, 1981, an order was entered dismissing, with prejudice, Solzan as a defendant in the instant proceeding. Prior to trial on the Trustee's complaint, the parties on June 5, 1981, entered into a stipulation of certain facts, in relevant part, as follows:

1. Werner J. Hartman ("Hartman") one of the defendants herein was at all times sole shareholder and officer of Chicago Music Corporation ("CMC"), debtor herein, and Chicago Music Corporation of Franklin Park ("CMCFP") until at least October 17, 1979.

2. Until September, 1979, CMC was in the business of operating a retail store selling and installing stereo equipment and auto alarms at 8024 North Milwaukee Avenue, Niles, Illinois.

3. CMCFP was throughout 1979 and is still in the business of operating a retail store selling and installing stereo equipment and auto alarms in Franklin Park, Illinois.

. . . . .

7. At the time of the commencement of The Bankruptcy Proceeding, CMC asserted a claim against CMCFP for $12,466.53, as shown in the Schedule B filed in The Bankruptcy Proceeding, a copy of which is attached hereto as Exhibit 2.

8. Since the commencement of this proceeding, CMCFP has not made any payments directly to the Trustee to satisfy the debt referred to in paragraph 7 above, except that the Clerk of this Court holds $15,000 in which Hartman or CMCFP asserts an interest.

9. At the time of the commencement of The Bankruptcy Proceeding, CMC was insolvent.

10. On September 25, 1979, CMC was insolvent.

.    .    .    .    .

12. Ladislav Kolacny ("Kolacny") and Margie Kolacny ("Mrs. Kolacny") are individual defendants herein and are husband and wife, respectively.

13. Kolacny and Mrs. Kolacny were at all relevant times majority shareholders and officers of Century Music Corp. ("Century") at least until October 17, 1979.

14. In August or September 1979, Hartman and Kolacny began to negotiate an arrangement in which CMC or CMCFP would sell certain assets to Kolacny or a corporation owned by him.

15. On or within two days of September 3, 1979, Mrs. Kolacny purchased the assets set forth on Exhibits 1–A, 1–B and 1–C attached hereto and made a part hereof by paying $5,000.00 to CMC.

.    .    .    .    .

24. Attached hereto as Exhibit 7 is a true and accurate copy of a Bulk Sales Stop Order issued by the Illinois Department of Revenue and received by Hartman on or about September 25, 1979.

25. On September 25, 1979, Kolacny delivered to Hartman approximately $48,000 in cash.

26. On September 25, 1979, Kolacny paid to Seymor Reichlin $1,949 for rent owed by CMC and a debt owed by CMC for goods previously purchased.

27. On or about September 25, 1979, Kolacny or Mrs. Kolacny paid to Solzan a total of $15,000 to be held in escrow by Solzan ("The Escrow Fund") for CMC until the debt of CMC to the State of Illinois was fully satisfied.

28. Within one week after September 25, 1979, Kolacny delivered to Hartman another $5,000 in addition to the $48,000 described in paragraph 25 above.

4. At the trial, the parties presented evidence and testimony pertaining to the agreement between Hartman and the Kolacnys for the sale of the Debtor's assets. Hartman, called as an adverse witness by counsel for the Trustee, testified that during the summer of 1979, he entered into negotiations with LADISLAV KOLACNY [Kolacny], to sell assets of the Debtor to Kolacny and the Century Corporation. Hartman testified that on September 3, 1979, he met with Kolacny and MRS. MARGIE KOLACNY [Mrs. Kolacny] to consummate the sale. At that meeting, Kolacny gave Hartman a check in the amount of $5,000.00. Hartman deposited the check in the Debtor's account. Hartman testified that he met with Kolacny and his attorney, Solzan, and Kolacny's accountant, LARRY SCHROEDER [Schroeder], on September 25, 1979, at the Debtor corporation, and at that meeting, Kolacny gave Hartman $48,000.00 in cash. Hartman testified that a few days later, Kolacny gave him an additional $5,000.00. Said sum represented the remainder of the purchase price for the sale of assets of the Debtor corporation to Kolacny. Hartman testified that on September 28, 1979, Des Plaines National Bank repossessed the inventory of the Debtor corporation. The parties stipulated that Des Plaines National Bank was owed the sum of approximately $30,000.00 as of October, 1979. Hartman testified that the bookkeeper for the Franklin Park Corporation mailed a letter to customers of the Debtor stating that the Debtor had ceased operating at its Milwaukee Avenue location and had moved to a nearby site.

5. Kolacny testified that he is an electronics technician, and was the President of the Century Corporation, which is no longer in business. In said business, Kolacny sold and installed stereo equipment. Kolacny testified that the purpose of naming his

company "Century Music Corporation" was to take advantage of the CMC sign of the Debtor corporation. Kolacny testified that when he first talked to Hartman regarding the purchase of assets of the Debtor, Hartman offered to sell the Debtor corporation and the Franklin Park Corporation for $350,000.00. Kolacny testified that after further discussions with Hartman, he agreed to buy Debtor's small tools and furniture for $5,000.00. Kolacny testified that Hartman was paid $15,000.00 for leasehold improvements. Kolacny testified that on September 25, 1979, he paid to the Debtor's landlord, Mr. Reichlin, the sum of $1,949.00 for back rent in order to assume the Debtor's lease. Kolacny testified that on September 25, 1979, he gave Solzan $15,000.00 to be held in escrow for payment of tax claims. Kolacny testified that the Century Corporation took over the phone number of the Debtor. Kolacny testified that at the time of purchase, he thought he would benefit from the previous advertising and goodwill of the Debtor corporation. Kolacny testified that he paid Hartman $55,000.00 for a covenant not to compete, and that said agreement provided that Hartman would not compete with the Century Corporation for three years and that Hartman would assist in the Century Corporation's operations for three years as a consultant.

6. Kolacny testified that two months after September 25, 1979, Hartman wrote a letter to customers of the Century Corporation stating he had a new location. Kolacny testified that after these letters were sent, Hartman refused to provide assistance. Kolacny testified that payments made to Hartman previously were to keep Hartman from selling to the customers of the Debtor. Kolacny testified that the sums of $5,000.00 and $15,000.00 were paid to the Debtor corporation; however, the sum of $55,000.00 was paid to Hartman personally. Kolacny testified that he had previously purchased items similar to the tools and equipment of the Debtor, and that the items were worth only $2,000–$3,000, rather than the $5,000.00 actually paid. Kolacny testified that based on his prior experience the leasehold improvements were worth approximately $10,000.00, rather than the sum of $15,000.00 actually paid, because they were attached to the building and cannot be removed. Kolacny testified that as a part of the sale, Hartman executed an agreement to indemnify Kolacny and the Century Corporation for loss or injury sustained as a result of claims, demands, costs, judgment and attorney's fees arising from Hartman's operation of the Debtor corporation. Kolacny testified that he is seeking recovery from Hartman for costs incurred in this adversary proceeding.

7. Hartman on direct examination by his counsel testified that the equipment purchased by the Kolacnys was worth only $2,000–$3,000. Hartman testified that the sum of $15,000.00 was actually compensation for the location and for the fixtures. Hartman testified that he did not sell the customer lists of the Debtor corporation to the Kolacnys. Hartman testified that he did not leave customer lists or the books of the Debtor corporation in the store after the sale.

8. Solzan testified that, as an attorney, he helped organize the Century Corporation in October, 1979. Solzan testified that he was introduced to the Kolacnys by their accountant, Schroeder. Solzan testified that prior to the sale on September 25, 1979, he contacted the Illinois Department of Revenue for the purpose of ordering a stop order to determine the tax liability of the Debtor corporation. Solzan testified that he was told by the Illinois Department of Revenue to hold back the sum of $15,000.00. Solzan testified that he prepared the indemnity agreement. Solzan testified that on the date of the sale, he and Schroeder discussed the preparation of a written covenant not to compete in order to document Hartman's oral promise and for resultant tax advantages. Solzan testified that he then prepared a covenant not to compete and had Hartman execute it. Solzan testified that the sum of $15,000.00 was held back pursuant to the stop order issued by the Illinois Department of Revenue.

9. Schroeder testified that he was the accountant for the Kolacnys, and was intro-

duced to Hartman by the Kolacnys prior to the sale. Schroeder testified he attended the sale on September 25, 1979 at 1:00 p.m., and that he, along with Kolacny and Hartman, counted the money paid to Hartman. Schroeder testified that $48,000.00 in cash was given to Hartman in $10's and $20's. Schroeder testified that he suggested a covenant not to compete be executed by Hartman in exchange for $48,000.00 for tax advantages as an immediate tax deduction.

The Court Concludes and Further Finds:

1. Pursuant to Section 548 of the Code, the trustee may avoid fraudulent transfers of a debtor's property where the debtor:

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer occurred or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

A fraudulent transfer has been defined as, "a deceitful device through which the debtor seeks to secure an advantage for himself out of what in law should belong to his creditors and not to him." *In re Roscar Steel Scrap and Metals Corp.,* 12 B.R. 629, 634 [S.D.N.Y.1981]. It has been held that in cases where a party holds a controlling interest in the debtor corporation, he stands in a fiduciary capacity to the corporation, its stockholders and creditors. *In re Famous State Fair Meat Products, Inc.,* 19 B.R. 48, 50 [Bkrtcy.E.D.Pa.1982]. In the case of *In re Famous State Fair, supra,* the court voided transfers made by the defendant who was a controlling shareholder of the debtor. Said defendant issued checks drawn on the corporate account to himself and two corporate entities owned by the debtor, and the defendant was the only employee of these corporate entities. *Id.* at 50.

2. With reference to fraudulent transfers and conversion of assets under Counts 1, 3, 5, 6, and 7 of the Trustee's Complaint, the testimony and pleadings filed do not indicate that Hartman made the transfer of the Debtor's assets with intent to hinder, delay or defraud customers under 548(a)(1) of the Code. Under Section 548(a)(2), however, all that need be established is that the Debtor received less than a reasonably equivalent value, and that at the time of the transfer, the Debtor was insolvent or became so as a result of the transfer. As concluded above, the parties have stipulated that as of the date of transfer, the Debtor was insolvent. The testimony of Hartman and the Kolacnys was that the sums paid for the fixtures and leasehold interest were more than a reasonable equivalent. The Trustee did not offer any testimony or evidence to the contrary, and the Court must conclude that a reasonable equivalent was paid for the fixtures and leasehold. However, with reference to the non-competition agreement, the evidence is less clear. Hartman testified that he did not provide any customer lists or records of the Debtor in his transactions with the Kolacnys. Kolacny testified that his main concern in his transaction with Hartman was that Hartman might set up another stereo business and draw the old customers of the Debtor from his location. Kolacny testified that the purpose of naming his business "Century Music Corporation" was to take advantage of the Debtor's initials, CMC. From the evidence, the Court must conclude that the heart of the transaction between Hartman and Kolacny was the so-called "non-competition agreement", not the sale of fixtures. Hartman, as sole shareholder and principal officer of the Debtor corporation, was not entitled to personally receive

sums for the non-competition agreement since he and the corporation, for all intent, are one and the same. The sum paid the Debtor corporation is grossly inadequate considering the nature of the bargain. The Court concludes from the testimony and evidence presented that the sum paid to the Debtor corporation should have included the sums kept by Hartman personally, and that the transfer of the Debtor's interest without such payment constitutes a fraudulent transfer within the purview and meaning of Section 548(a)(2) of the Code. The Court concludes that the Kolacnys and Century Music Corporation should be jointly and severally liable to the Debtor for the sum of $75,000.00 less the sum of $21,949.09 paid to the Debtor corporation for a total of $53,-050.91. The Court concludes that Hartman should repay the estate the sum of $53,-050.91 he received under the covenant not to compete. In rendering judgment against the Kolacnys, the Court will deny the Kolacnys' cross-claim filed June 15, 1981. It would be improper to indemnify the Kolacnys under an agreement and sale which this Court has invalidated under Section 548 of the Code. With reference to Count 6 of the complaint, the Court must conclude that the Trustee has failed to present any evidence that Hartman converted inventory of the Debtor. Instead, the evidence shows that the inventory was reclaimed by Des Plaines National Bank.

3. With reference to Counts 2, 4, 8, and 10 of the Trustee's complaint, the Court concludes that the lien of the State of Illinois pursuant to the Bulk Sale Provisions under Ill.Rev.Stat.1977, Chapter 26, Sec. 6–101—6–110, must be invalidated. Under Section 544(b) of the Bankruptcy Code, a trustee, standing in the shoes of unsecured creditors, may assert any rights he may have against a debtor under state bulk sale provisions and other applicable state laws. *In re Curtina International, Inc.,* 23 B.R. 969, 976 [Bkrtcy.S.D.N.Y.1982]. This power applies only where inventory is involved and the transfer was not in the ordinary course of business. *In re Curtina, supra,* at 977. To establish that a close-out sale was in the ordinary course of business, it must

be established that: (1) the sales were a common practice; (2) the debtor routinely disposed of leftovers in close-out sales; and (3) there was no discontinuance of any branch of the debtor's business. *Id.* at 977. Pursuant to Section 6–102 of Chapter 26, the bulk sale provision only applies to transfers of inventory, as follows:

> (2) A transfer of a substantial part of the equipment of such an enterprise is a bulk transfer *if it is made in connection with a bulk transfer of inventory, but not otherwise....*
>
> (4) Except as limited by the following section all bulk transfers of goods located within the state are subject to this article. [emphasis supplied]

The testimony indicates that the assets sold to the Kolacnys consisted of fixtures and leasehold interest, and inventory was not included in the transaction according to the testimony presented. Said inventory was repossessed by Des Plaines National Bank on September 28, 1979. Under Section 545(1)(D) of the Code, a trustee may avoid statutory liens, as follows:

> The Trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—
>
> (1) first becomes effective against the debtor—
>
> (D) when the debtor becomes insolvent.

The parties have stipulated that as of September 25, 1979, the date of the transfer and date of filing of the bulk sale order, the Debtor was insolvent. On this basis, the lien of the State of Illinois must be invalidated under Count 10 of the Trustee's complaint. Because this Court has concluded that the transfer did not constitute the sale of inventory under Illinois Bulk Sale provisions, judgment against the Defendants will not be entered under Counts 2, 4, and 8 under the Trustee's complaint.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the complaint to collect fraudulent transfers of property pursuant to Section 548 of the Bankruptcy Code and Illinois Revised Statute Chapter 26, filed by the Trustee, ED-

WARD LIMPERIS, be, and the same is hereby, granted.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that judgment in the amount of $53,050.91 be entered jointly and severally against Defendants, DEBORAH J. HARTMAN, as Administratrix of the Estate of WERNER J. HARTMAN, CHICAGO MUSIC CORPORATION OF FRANKLIN PARK, MARGIE KOLACNY, LADISLAV C. KOLACNY, and CENTURY MUSIC CORPORATION.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that judgment in favor of the Trustee, EDWARD LIMPERIS, in the amount of $15,000.00, be, and the same is hereby, entered against the Defendant, ILLINOIS DEPARTMENT OF REVENUE.