**CHRYSLER CREDIT CORPORATION, Plaintiff–Appellant,**

v.

**LOUIS JOLIET BANK AND TRUST CO., Defendant–Appellee.**

No. 87–2520.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 24, 1988.

Decided Nov. 28, 1988.

Maurice J. McCarthy, Chicago, Ill., for plaintiff-appellant.

Steven H. Hoeft, McDermott Will & Emery, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, and MANION, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Louis Joliet Bank and Trust Company and Chrysler Credit Corporation each held a security interest in the beneficial interest in an Illinois land trust. When the debtor defaulted on his obligations to the bank, the bank foreclosed its senior security interest. Chrysler brought a diversity suit in the district court for declaratory judgment, claiming that the parties' actions, as well as the doctrine of merger, had terminated the land trust and destroyed the bank's senior security interest. The district court disagreed and entered summary judgment in favor of the bank. We affirm.

## I. BACKGROUND

On August 6, 1981, Theodore Benson created a land trust. The land trust agreement named Louis Joilet Bank and Trust Company as the trustee and gave Mr. Benson a beneficial interest in the land trust. On August 27, 1982, Mr. Benson became indebted to the same bank. As collateral for that debt (and subsequent loans), the bank accepted assignments from Mr. Benson of his beneficial interest in the land trust.

For several years, Mr. Benson owned automobile dealerships. At various times, Chrysler Credit Corporation granted extensions of "floor-line" credit to Mr. Benson, allowing him to purchase automobiles for resale. In 1982, Mr. Benson suffered serious injuries in an accident which prevented him from continuing to operate his automobile dealerships. Consequently, he failed to make payments on his indebtedness to Chrysler. Thereafter, Chrysler allowed Mr. Benson to dispose of the automobile dealerships and the automobile collateral securing Chrysler's loans. Concurrently, on December 21, 1982, he granted Chrysler a junior lien on real estate which represented the primary asset of the land trust.

Mr. Benson's right under an installment contract to purchase certain real estate represented another asset of the land trust. Shortly after June 29, 1983, he advised the bank that he was in default on his obligations under that installment contract and that he could not cure the default. The

bank, with Mr. Benson's consent, purchased the seller's interest in the real estate which was the subject of the installment contract. On October 6, 1983, the bank (as Mr. Benson's creditor), Mr. Benson, and the bank again (as trustee of the land trust) entered into a contract (the first agreement) whereby all parties agreed to divide the proceeds from the bank's sale of the installment contract real estate between the bank (as creditor) and the land trust.

After December 21, 1982, Mr. Benson made no repayment of his debts owed to the bank. By April 29, 1985, Mr. Benson's indebtedness to the bank was $1,148,651.70. On that date, Mr. Benson and the bank entered into another contract (the second agreement) wherein Mr. Benson acknowledged his default on his indebtedness. He also acknowledged that this indebtedness had been secured by the bank's security interest in, among other things, Mr. Benson's beneficial interest in the land trust. Accordingly, given the pre-existing security arrangement and the acknowledged default, Mr. Benson relinquished to the bank (in its role as creditor) his rights to the beneficial interest in the land trust.[1]

In exchange for Mr. Benson's acknowledgements and immediate relinquishment of his interest, the bank released Mr. Benson from all of his pre-existing indebtedness to the bank with the understanding that the collateral—that is, the beneficial interest in the land trust—would be liquidated and used to satisfy the indebtedness. The bank agreed to this release even though the collateral might not be sufficient to satisfy the indebtedness fully.

The second agreement also apparently provided for the complete recision of the October 6, 1983 agreement—the first agreement which concerned the division of the proceeds from the sale of the installment contract property.

On May 7, 1985, the bank gave notice of its intent to conduct a creditor's sale pursuant to the Uniform Commercial Code of the beneficial interest in the land trust.[2] Chrysler filed a diversity suit in federal court on June 7, 1985, claiming that by operation of law it was the primary security interest holder and was entitled to foreclose on the beneficial interest. Nevertheless, the bank conducted the foreclosure sale on June 10, 1985, which Chrysler attended. The bank received net proceeds of $954,385.00 for the sale of the beneficial interest which were insufficient to satisfy fully the debt owed by Mr. Benson to the bank.

In Chrysler's suit, it sought a declaration that the second agreement actually terminated the original land trust agreement and extinguished the bank's senior security interest in the land trust, leaving Chrysler's junior security interest as the sole lien upon the land trust's beneficial interest. Chrysler also sought a mortgage foreclosure on that interest. Finally, it sought an accounting of the proceeds. The parties dismissed the final count by agreement.

Both parties filed motions for summary judgment. Chrysler first claimed that the bank and Mr. Benson intended to terminate the original land trust agreement when they executed the second agreement on April 29, 1985. Chrysler next argued that the original land trust agreement terminated by operation of law. Chrysler contended that the doctrine of merger operated to abolish the bank's senior security interest because the bank held both the equitable and the legal interests in the land trust under the second agreement. Chrysler concluded that under either theory its former junior security interest was the only security interest left to foreclose.

---

1. The bank entered into the second agreement because "the Bank deem[ed] it in their best interest to have the continued cooperation of Benson, now and in the future, in the liquidation of the pledged assets to assist in attaining the maximum amount to be applied in payment of Benson's obligations to the Bank." (Agreement of Apr. 29, 1985).

2. A beneficiary's interest in an Illinois land trust is an interest in personal property and not an interest in real property. *First Federal Savings & Loan Ass'n of Chicago v. Pogue,* 27 Ill.Dec. 588, 72 Ill.App.3d 54, 389 N.E.2d 652 (1979); *Melrose Park Nat'l Bank v. Melrose Park Nat'l Bank,* 123 Ill.App.3d 282, 78 Ill.Dec. 622, 624, 462 N.E.2d 741, 743 (1984).

The bank also moved for summary judgment. The bank argued that when it and Mr. Benson created the second agreement on April 29, 1985, they intended to terminate the first agreement—concerning the installment contract land—not the original land trust agreement. Further, the bank contended that Illinois law expressly permitted the bank to liquidate the land trust's beneficial interest.

The district court granted summary judgment in favor of the bank and dismissed Chrysler's two remaining counts. The court found that the second agreement terminated the first agreement concerning the installment contract property, not the original land trust agreement. The contract language indicated that the agreement being cancelled was a three-party agreement. The first agreement was such a three-party agreement, while the original land trust agreement was only a two-party agreement. Further, the bank had offered the uncontradicted testimony of Jeffrey Bowden to prove that the parties intended the second agreement to cancel the first agreement. Finally, the district court found that Illinois law expressly permits a bank which is trustee of a land trust to acquire a security interest in the beneficial interest of a land trust and deal with the property like any other creditor—including liquidation of the interest pursuant to a creditor's sale. Chrysler appeals the district court's decision.

## II. ANALYSIS

Chrysler raises two issues to challenge the district court's decision to grant summary judgment in favor of the bank. First, Chrysler argues that the district court wrongly concluded that the parties did not expressly intend to terminate the land trust agreement. Chrysler believes that the district court considered inadmissible evidence and erroneously concluded that no material issue of fact existed at the time it granted the bank's motion for summary judgment. Second, Chrysler argues that the district court misapplied prevailing trust law to conclude that the merger doctrine did not terminate the land trust by operation of law. We address each of Chrysler's contentions separately.

### A. *The Intent of the Parties*

In its complaint, Chrysler alleged that when Mr. Benson and the bank entered into the second agreement on April 29, 1985, they expressly intended to cancel the land trust and give the entire interest in the land trust to the bank—a transaction which Chrysler believes elevated its junior secured interest to a senior position.[3] Chrysler pleaded and relied upon Paragraph 4 of the second agreement to support its contention that an absolute transfer was intended by the parties.[4]

The bank disagreed with Chrysler's position, arguing that Paragraph 4 reflected an intent to rescind the first agreement concerning the installment contract property rather than the original land trust agreement. Furthermore, the entire purpose of the second agreement was to foreclose on the land trust's assets, not to destroy the trust itself.

▪ The district court found that the second agreement, "while ... not the model of clarity," referred to an agreement between three parties—Mr. Benson, the bank as creditor, and the bank as trustee. The original land trust agreement was only an agreement between two parties—Mr. Benson and the bank as trustee. Thus,

---

**3.** The district court noted that Chrysler did not cite any authority to support its claim that "the effect of the second agreement was to elevate its security interest to the status of the only secured interest in the Land Trust's Beneficial Interest." (Memorandum Op. Aug. 20, 1987).

**4.** Paragraph 4 states:
> 4. Benson and Bank hereby agree that the certain Agreement entered into between them and Louis Joliet Bank and Trust Company, as Trustee under Trust Agreement dated the 6th day of August, 1981 and known as Trust 818–81 shall be rescinded and cancelled and they do hereby rescind and cancel such agreement and direct the Louis Joliet Bank and Trust Company, Trustee under Trust Agreement dated the 6th day of August, 1981 and known as Trust 818–81 cancel and rescind such agreement.
> (Agreement of Apr. 29, 1985).

Paragraph 4 of the second agreement could not be interpreted reasonably as rescinding the original land trust agreement. As a result, the district court granted summary judgment in favor of the bank. We agree with the district court's interpretation of the second agreement and affirm the district court's decision on the basis of the contract language.

Even if the language were insufficient to support the district court's decision, we also agree with the district court's finding that the bank produced sufficient uncontradicted evidence to support its motion for summary judgment. The bank offered the affidavit of Jeffrey Bowden to support its contention that the parties intended Paragraph 4 to rescind the first agreement concerning the installment contract property rather than the original land trust agreement. Mr. Bowden was the former vice president and manager of the bank's loan department.[5]

Chrysler contends that the district court could not consider the Bowden affidavit because it was "replete with opinions which are unsupported by statement of fact, plus opinions which do not come from personal knowledge...."[6] As we stated, we believe that the district court's decision to grant summary judgment in favor of the bank easily stands without reliance upon the Bowden affidavit. However, after reviewing Mr. Bowden's affidavit, we are of the opinion that the district court properly could have relied upon that affidavit when reaching its decision.

---

5. He served in that capacity when the trust was established on August 6, 1981, when the bank's senior security interest was created on December 21, 1982, and when the first agreement was made on October 6, 1983. He was the bank's senior vice president and cashier when the second agreement was made on April 29, 1985, and when the UCC sale was held on June 10, 1985.

6. Chrysler challenges Mr. Bowden's attestations to the collective belief, opinion, and intent of the bank during the negotiations which led to the second agreement on April 29, 1985. For example, Chrysler challenges that portion of Bowden's affidavit which states:
   The Bank nevertheless accepted the transfer of assets as full satisfaction of Benson's debt

Clearly, an affiant must have personal knowledge of the matters to which he testifies. In this case, Mr. Bowden was the vice president and manager of the bank's loan department. As such, he had knowledge of the transactions in issue and the bank's ordinary operating procedures. We conclude that he was competent to testify about the matters contained in his affidavit and note that his affidavit supports the bank's position.

Chrysler next argues that even if the Bowden affidavit was technically admissible it created a material factual dispute which precluded the district court from granting the bank's motion for summary judgment. Chrysler contends that it offered evidence which contradicted Mr. Bowden's assertions that the parties did not intend to terminate the land trust, but instead to terminate the first agreement concerning the installment contract property. We do not think Chrysler met its burden of proving that a material factual issue existed.

To oppose the bank's motion, Chrysler had "the responsibility of going beyond the pleadings and setting forth 'specific facts showing that there [was] a genuine issue for trial.'" *In re Wildman,* 859 F.2d 553, 556 (7th Cir.1988) (quoting *Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 822 F.2d 656, 659 (7th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987)). Chrysler was required to demonstrate that a factual dispute existed which was "outcome determinative." *Id.* (citing *Donald v. Polk County,* 836 F.2d 376, 378–79 (7th Cir.1988)). "If the evidence is merely

---

because it believed, based upon Benson's history of non-payment and his representations about his financial affairs, that this was the best deal available to the Bank as Benson's creditor.

   Chrysler also maintains that Mr. Bowden made inadmissible "conclusory" statements such as, "The Land Trust continued in existence after April 29, 1985 and was not terminated." Furthermore, Chrysler challenges Mr. Bowden's alleged opinions as to "possibility" such as, "If the Land Trust had been cancelled as of April 29, 1985, the Bank as trustee would have promptly conveyed out the property held in the Land Trust."

colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of [Chrysler's] position will be insufficient; there must be evidence on which the jury could reasonably find for [Chrysler]." *Anderson*, 106 S.Ct. at 2512.

First, Chrysler offered the deposition of Mr. Benson. In that deposition, Mr. Benson testified that when he signed the second agreement he intended to transfer his entire beneficial interest in the land trust to the bank and to extinguish all of his prior indebtedness to the bank. (Benson deposition at 7–8). However, as the district court correctly stated, "Benson never testified ... that his *only* intention in signing the April 29 agreement was merely to transfer his beneficial interest and extinguish his indebtedness." Thus, he also may have intended to rescind the first agreement concerning the installment contract property. Read in this manner, this evidence does not contradict the bank's position.

Chrysler also offered the affidavit of Richard N. Golding, who represented Mr. Benson during the negotiation of the second agreement.[7] Mr. Golding stated that the purpose of the second agreement was to settle all obligations of Mr. Benson to the bank "by an absolute assignment of his interest in the land trust" to the bank. Mr. Golding also stated that the parties did not negotiate about, or refer to, "any subsidiary agreements." However, Mr. Golding never stated affirmatively that the parties intended Paragraph 4 to cancel the original land trust agreement. Instead, he only alleged that the second agreement allowed the bank to take control of the land trust for purposes of foreclosure. Consequently, we conclude that Mr. Golding's affidavit— although somewhat ambiguous—does not plainly contradict the Bowden affidavit and does not create a material factual dispute.

Chrysler has failed to prove that the Bowden affidavit created a material factual dispute. In effect, Chrysler failed to offer any evidence which contradicts the Bowden affidavit, thus making a grant of summary judgment appropriate. *DF Activities Corp. v. Brown*, 851 F.2d 920, 922–23 (7th Cir.1988). Thus, contrary to Chrysler's assertions, we do not believe that a material factual dispute existed to preclude the district court from granting summary judgment in favor of the bank.

### B. *The Merger Doctrine*

Chrysler appeals the district court's holding that the doctrine of merger did not terminate the land trust by operation of law. Chrysler argues that, because the bank held both legal and equitable title in the trust after Mr. Benson assigned his beneficial interest in the trust to the bank, the land trust terminated, thereby extinguishing the bank's senior security interest and elevating Chrysler's junior security interest to a priority position. Chrysler's arguments are misplaced.

"The Illinois land trust, by its very nature, is characteristically different from common law land trusts. While the common law accomplishes a split between the legal title in the trustee and the equitable title in the beneficiary, in an Illinois land trust, the trustee has both the legal and equitable title." *Levine v. Pascal*, 94 Ill. App.2d 43, 236 N.E.2d 425, 429 (1968); *see also Citicorp v. Bank of Lansing*, 604 F.Supp. 585 (N.D.Ind.1985); *In re Estate of Alpert*, 102 Ill.App.3d 600, 58 Ill.Dec. 239, 241, 430 N.E.2d 181, 183 (1981), *aff'd*, 95 Ill.2d 377, 69 Ill.Dec. 361, 363, 447 N.E.2d 796, 798 (Ill.1983); *Kurek v. State Oil Co.*, 98 Ill.App.3d 6, 53 Ill.Dec. 643, 645, 424 N.E.2d 56, 58 (1981); *People v. Chicago Title & Trust Co.*, 75 Ill.2d 479, 27 Ill.Dec. 476, 479, 389 N.E.2d 540, 543 (1979). Numerous authors have referred to the fictional nature of such trust. *See, e.g.*, Haswell & Levine, *The Illinois Land Trust: A Fictional Best Seller*, 33 DePaul Ill.Rev.

---

7. Mr. Golding provided and relied upon certain letters which had been exchanged among the parties during the negotiations preceding the creation of the second agreement to support his testimony. Chrysler also submitted these letters with its motion for summary judgment.

277 (1984); Kenoe, *Land Trust Financing and the Uniform Commercial Code*, 52 Chi.B.Rec. 419 (1971). The Illinois land trust is a species of trust that, unlike other trusts, is immune to the doctrine of merger under most circumstances.

Now, Paragraph 82 of Chapter 148 of the Illinois Revised Statutes specifically permits the bank to wear both the hat of a creditor secured by the assignment of a beneficial interest in a land trust and the hat of the trustee of the same land trust.[8] Paragraph 82 also states that a creditor may "acquire and deal with the property comprising the security as if the creditor were not the trustee."

Chrysler contends that Paragraph 82 does not bar operation of the merger doctrine under the circumstances of this case. Chrysler believes that the merger doctrine may destroy a land trust if a bank acquires the beneficial interest and the legal interest as part of an "absolute" transfer, rather than as part of a "financing" scheme. *See* Ill.Rev.Stat. ch. 148, ¶ 81(a)(5), (b) (1985). In effect, Chrysler asserts that the statute protects an assignment intended for collateral purposes only, and it has no application whatsoever to absolute assignments (or sales) of a beneficial interest to a trustee.

Applying the foregoing to this case, Chrysler then argues that the bank and Mr. Benson intended an absolute transfer (or purchase) of Mr. Benson's entire interest in the land trust when they created the second agreement. Consequently, when the bank acquired both the equitable and legal title under those circumstances, the doctrine of merger terminated the land trust since Paragraph 82 of Chapter 148 did not apply. Chrysler concludes that its

junior security interest thereafter was elevated to a priority position.

■ We need not decide whether Illinois law in fact contemplates a distinction between "financing" transactions and "absolute transfers" (or "purchases") of land trust interests. In this case, the bank clearly did not purchase Mr. Benson's interest in the land trust.

The district court properly determined that Paragraph 82 authorizes a creditor to acquire the collateral and dispose of it upon a debtor's default. In this case, the second agreement permitted the bank to arrange for an amicable acquisition of collateral to which it was already entitled upon Mr. Benson's default. In effect, the second agreement merely memorialized the bank's statutory right as the secured creditor of a defaulted debtor to acquire the collateral—the land trust's beneficial interest—and immediately sell it to satisfy the debt to the extent possible. If we interpreted the agreement as an "absolute transfer" and held that the land trust was destroyed, no creditor could ever acquire the collateral for purposes of foreclosure as the statute contemplates. Therefore, we hold that the common law doctrine of merger did not apply to terminate the land trust under these circumstances.

### C. *Request for Certification*

■ Despite the clear intent of Paragraph 82 of Chapter 148 of the Illinois Revised Statutes, Chrysler asks us to certify the land trust/doctrine of merger question to the Illinois Supreme Court pursuant to Ill.Rev.Stat. ch. 110A, ¶ 20 (1987).[9] We need not certify the proposed question for two reasons. First, Chrysler did not make its request until it filed its reply brief. It is well settled that an issue raised for the

---

**8.** Paragraph 82 of Chapter 148 reads:

   82. Trustee as creditor—Effect—Definitions

    2. If a debt is secured by a security interest in a beneficial interest in a land trust ..., neither the validity or enforceability of the debt, security interest ... nor the rights, remedies, powers and duties of the creditor with respect to the debt or the security shall be affected by the fact that the creditor and the trustee are the same person, and the creditor

may extend credit, obtain such security interest ... and acquire and deal with the property comprising the security as though the creditor were not the trustee.

**9.** Chrysler requests us to certify the following question: "whether or not § 82, C. 148 of the Illinois Revised Statutes should or should not be applied to purchases by a land trustee-secured creditor of the trust's beneficial interest."

first time in a reply brief will not be considered. *Taylor v. Peabody Coal Co.*, 838 F.2d 227, 229 (7th Cir.1988); *Appley v. West*, 832 F.2d 1021, 1030 (7th Cir.1987); *Manbourne, Inc. v. Conrad*, 796 F.2d 884, 888 (7th Cir.1986). Second, even if we were to consider it, absolutely no ambiguity surrounds our application of this statute. Clearly, Paragraph 82 of Chapter 148 was meant to apply to the transaction at issue here.

### III. CONCLUSION

The district court properly granted summary judgment in favor of the bank. Chrysler failed to present evidence to support the allegations in its complaint. Chrysler offered no evidence to contradict the plain intent of the challenged agreement. Furthermore, Chrysler failed to prove that a material factual dispute existed to preclude summary judgment.

The district court correctly applied prevailing trust law. Under Illinois law and the circumstances of this case, a party may hold both the legal and equitable title in an Illinois land trust without fear that the common law doctrine of merger will destroy that trust. The district court correctly held that the transactions between Louis Joliet Bank and Trust Company and Theodore Benson fell within the plain meaning of Paragraph 82 of Chapter 148 of the Illinois Revised Statutes.

We decline to certify Chrysler's proposed question to the Illinois Supreme Court. Chrysler failed to make its request in a timely manner and no ambiguity surrounds our application of the challenged Illinois statute.

For the foregoing reasons, Chrysler Credit Corporation's request for certification is DENIED and the judgment of the district court is AFFIRMED.