14 F.3d 605
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America Plaintiff-Appellee,
v.
Lauro REYES, Defendant-Appellant.
 No. 92-2253.
 United States Court of Appeals, Seventh Circuit.
 Argued July 7, 1993.
Decided Dec. 7, 1993.
 
 1
 Before COFFEY and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge
 
 ORDER
 
 2
 Defendant-appellant Lauro Reyes asks us to vacate his sentence of 168 months' imprisonment and requests that we remand this case to the district court for resentencing. Lauro Reyes asserts that the district court erroneously enhanced his offense level by two points under the United States Sentencing Guidelines ("U.S.S.G.") for his managerial role in the crime. Because the district court's upward adjustment is not clearly erroneous and is supported by facts in the record, we affirm.
 
 
 3
 * Lauro Reyes was charged in a two-count indictment with conspiracy to distribute approximately two kilograms of cocaine, in violation of 21 U.S.C. Sec. 846, and with possession with intent to distribute 998 grams of a mixture containing cocaine, in violation of 21 U.S.C. Sec. 841(a)(1). In March 1991, Jim Combs, an individual cooperating with the Drug Enforcement Agency, met with Emigdio Reyes ("Emigdio"), Lauro Reyes' uncle, to arrange a purchase of cocaine. At their meeting, Emigdio stated that he had just received three ounces of cocaine from his cousin's house where he had seen an additional ten kilograms. Combs asked whether he could purchase two kilograms of cocaine for a friend. Emigdio then placed a telephone call and stated that Combs could meet him the next day for further discussions. When Combs returned the next day, Emigdio indicated that he had to call his contacts from a pay phone. The two then drove to a nearby gas station. Emigdio placed a telephone call and informed Combs that he could sell two kilograms of cocaine for $30,000 per kilogram. They arranged to meet between 6:00 p.m. and 7:00 p.m. that evening. After the conversation, both Emigdio and Combs returned to Emigdio's house. Emigdio, however, did not allow Combs to enter immediately. Once Emigdio allowed Combs to enter, Emigdio indicated that the "deal" could proceed the next day, and that Combs and his "friend" (DEA agent Kirk Meyer) should meet him at a nearby White Hen Pantry at 12:00 p.m. The price of the cocaine, however, had increased to $31,000 per kilogram.
 
 
 4
 The following day, Combs and Meyer traveled to the White Hen Pantry where they met Emigdio and co-defendant Hector Olvera. Emigdio informed Combs that Combs would have to travel with Emigdio and Olvera to another meeting place (the Martin Gas Station), and that his "friend" (Meyer) would have to follow behind. In the car, Emigdio stated that the "plan" was to travel to someone's house where the transaction could occur. Once the group reached the gas station, Meyer (having spoken with Combs) introduced himself as the buyer, stated that he had the money with him, and insisted that the "deal" could not occur in a house. After viewing the money, Emigdio placed a telephone call. Emigdio then instructed Combs and Meyer to meet back at the gas station at 2:00 p.m. After the group dispersed, DEA agents followed Emigdio and Olvera and observed them meeting with defendant-appellant Lauro Reyes.
 
 
 5
 Later that day at 2:00 p.m., all the parties arrived at the gas station to complete the deal, including the defendant-appellant Lauro Reyes ("Lauro"). After speaking briefly with Emigdio, Lauro approached Meyer. The two entered Lauro's car and Lauro asked to see the money. Meyer indicated that it was in the trunk of his car and asked to see the cocaine. Lauro apologized that he had only one kilogram of cocaine, but added that the quality was good and stated that he could obtain an even higher quality kilogram in one hour. At this point, Lauro exited the car, obtained a brown package from an unknown individual in a different car, and returned to Meyer. Lauro handed Meyer a package containing one kilogram of cocaine. Subsequently, agents arrested all the individuals involved, with the exception of the unknown person who left the scene immediately after delivering the cocaine.
 
 
 6
 Lauro Reyes pleaded guilty to both counts of the indictment. At sentencing, the government sought a two-level enhancement under U.S.S.G. Sec. 3B1.1(c)[1] for Lauro's role as a manager and supervisor of the criminal activity. Lauro objected to the proposed enhancement, on the ground that he was merely an "errand boy" who delivered the contraband to his uncle Emigdio, the true supervisor of the transaction. The district court rejected Lauro's objection, stating
 
 
 7
 I think the argument that Emigdio was the supervisor and Lauro was the errand boy flies in the face of the reality of this sort of business. The supervisor and direct dealer and source does not call the errand boy under the circumstances presented in this case. It is the other way around ordinarily. And I think it's true here as well.
 
 
 8
 The court accordingly sentenced Lauro to 168 months' imprisonment. Lauro appeals.
 
 II
 
 9
 We review a district court's section 3B1.1(c) two-level enhancement under a "clearly erroneous" standard. United States v. Skinner, 986 F.2d 1091, 1095 (7th Cir.1993); United States v. Jackson, 983 F.2d 757, 762 (7th Cir.1993). An enhancement is clearly erroneous "only if, after reviewing all the evidence, the appellate court is left 'with the definite and firm conviction that a mistake has been committed.' " United States v. Brown, 900 F.2d 1098, 1102 (7th Cir.1990) (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985)). In the present case, Lauro argues that the district court committed just such a mistake by deeming him a "supervisor" or "manager" and accordingly enhancing his Guidelines offense level by two points. Lauro maintains that the record does not support the district court's conclusion that Lauro was more responsible for the offense than others involved.[2] Rather, he argues that the evidence demonstrates that he was merely a "delivery boy."
 
 
 10
 We have recently emphasized that "the proper focus of the district court when considering whether to apply the section 3B1.1(c) two-point enhancement is on the defendant's role in the offense." Skinner, 968 F.2d at 1098. A defendant who plays a key role in a drug distribution scheme and who "coordinate[s] the procurement" of drugs is a proper candidate for the aggravated role enhancement. Id. at 1099. The question therefore arises whether the evidence of record supports the district court's view that Lauro played a key role in the drug distribution transaction and whether he coordinated the procurement of the cocaine. We believe that this record supports such a conclusion.[3]
 
 
 11
 Emigdio Reyes (Lauro's uncle) and Hector Olvera (co-defendant) did not know the identity of the source of the cocaine, nor did they deal with the source or arrange the procurement of the drugs. R. 43 at 10. Lauro Reyes alone was privy to this information and only he could secure the cocaine. Id. Emigdio relied on Lauro to acquire the drugs and to specify the location of the transaction. Id.; R. 73 at 4; Tr. of May 11, 1992 at 7. Furthermore, only Lauro Reyes engaged in the actual drug transaction with the buyer (Agent Meyer). Emigdio Reyes and Hector Olvera remained purely passive observers during the entire drug "deal." R. 43 at 8-9. Finally, and perhaps most significantly, Lauro Reyes apologized for bringing only one kilogram of cocaine when the "deal" called for two, but indicated that he could secure a second kilogram of much higher quality cocaine in one hour. R. 1 at 4; R. 43 at 8. The district court was entitled to conclude that Lauro Reyes was the individual responsible for and able to arrange the procurement of the contraband.
 
 
 12
 Given that the record is replete with evidence of Lauro Reyes' "aggravated role" in the offense, the district court's decision to enhance Lauro's sentence by two levels is not clearly erroneous. Lauro Reyes' objections to the criminal sentence do not leave us "with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985).
 
 III
 
 13
 For the foregoing reasons, we AFFIRM the sentence imposed by the district court.
 
 
 14
 AFFIRMED.
 
 
 
 1 U.S.S.G. Sec. 3B1.1(c) provides in pertinent part, "If the defendant was an organizer, leader, manager, or supervisor in any criminal activity ... increase by 2 levels."
 
 
 [2]
 Lauro appears to argue that the district court committed error by enhancing his sentence pursuant to inaccurate recommendations contained in a presentence report ("PSR"). Lauro asserts that the PSR improperly based its recommendations on the "feelings" of Special Agent Guiffre. This argument is neither persuasive nor meritorious. Nothing in the sentencing hearing transcript indicates that the district court relied solely upon the PSR. As is discussed below, the record is replete with evidence of Lauro's "aggravated" or "supervisory" role in the offense. Furthermore, "[w]here there are [varying] ... views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Bessemer City, 470 U.S. at 574. Lastly, Lauro did not object at sentencing to the statements of Agent Guiffre contained in the PSR. As a result, he has waived these objections on appeal. United States v. Macias, 930 F.2d 567, 569-70 (7th Cir.1991)
 
 
 [3]
 At oral argument, and by later written order, we asked counsel to clarify the circumstances under which the entire transcript of the sentencing hearing of Emigdio Lauro was made a part of the record in this appeal after the defendant had been sentenced. We have cautioned that, when the government or the sentencing court relies upon the sentencing hearing of a co-conspirator to determine a disputed issue in sentencing such as the relative degrees of involvement of the various malefactors, it is incumbent on the district court to ensure that the defendant and his counsel have access to the transcript of that sentencing proceeding. See United States v. Morales, 994 F.2d 386, 389 (7th Cir.1993)
 Our examination of the record establishes that, without objection from the defense counsel, there were at least two references made to the sentencing hearing of Emigdio Lauro in the course of the sentencing at issue here. The failure of defense counsel to object at those points ends the matter. The district court did not consider any material over the objection of the defendant. In any event, we have examined the transcript of the sentencing hearing of Emigdio Reyes and believe that it is very clear that it did not improperly influence the district court. Indeed, we note that the two co-conspirators entered their guilty pleas at the same time and that it was the government's rendition of the evidence at that time that was discussed by the district court at the time of sentencing.
 Finally, we note that the defendant did not raise the matter of the inclusion of the entire record of Emigdio Reyes' sentencing hearing in his principal brief. This failure constitutes a waiver of the issue. See Chrysler Credit Corp. v. Louis Joliet Bank & Trust, 863 F.2d 534, 540-41 (7th Cir.1988) ("[A]n issue raised for the first time in a reply brief will not be considered.").