In re the GRABILL CORP., an Illinois corporation, F.E.I.N. 36–3213792, Windsor–Hamilton, Ltd., an Illinois corporation, F.E.I.N. 36–3492216, Foxxford Group, Ltd., an Illinois corporation F.E.I.N. 36–3567177, Camdon Companies, Inc., an Illinois corporation, F.E.I.N. 36–3493930, the Techna Group, Ltd., an Illinois corporation, F.E.I.N. 36–3565211, Debtors. (Jointly Administered Cases).

HERITAGE BANK TINLEY PARK f/k/a Heritage Bremen Bank & Trust Company, Plaintiff,

v.

Jay STEINBERG, not Individually but as Trustee of the Estate in Bankruptcy of the Grabill Corporation, Defendant.

Bankruptcy Nos. 89 B 01639–89 B 01643. Adv. No. 90 A 0370.

United States Bankruptcy Court, N.D. Illinois, E.D.

Dec. 14, 1990.

Alexander Terras, LeAnn Pedersen Pope, Burke, Wilson & McIlvaine, Chicago, Ill., for Heritage Bank Tinley Park f/k/a Heritage Bremen Bank & Trust Co.

Matthew J. Botica, Michael A. Ficaro, Nancy Townsend Beggs, Hopkins & Sutter, Chicago, Ill., for Jay Steinberg, Trustee.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the motions of Heritage Bank Tinley Park ("Heritage Bank") for summary judgment pursuant to Federal Rule of Civil Procedure 56, incorporated by reference in Federal Rule of Bankruptcy Procedure 7056, and to dismiss the counterclaims filed by Jay A. Steinberg as trustee (the "Trustee") of the estate of The Grabill Corporation ("Grabill"), pursuant to Bankruptcy Rule 7012. For the reasons set forth herein, the Court, having reviewed the pleadings, the exhibits and affidavits attached thereto, hereby denies the motion for summary judgment and the motion to dismiss.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these motions pursuant to 28 U.S.C. § 1334 and General Rule 2.33(a) of the United

States District Court for the Northern District of Illinois. These matters constitute core proceedings under 28 U.S.C. § 157(b)(2)(A), (F) and (O).

## II. FACTS AND BACKGROUND

### A. THE CONTENTIONS OF THE PARTIES

The facts that give rise to the instant adversary proceeding, filed on May 9, 1990, surround the transfers of the beneficial interests in two Illinois land trusts by William J. Stoecker ("Stoecker"), president, chairman of the board and sole shareholder of Grabill.[1] The cause of action is based on various promissory notes secured by trust deeds, security agreements, assignments of rents and other documents, some of which were purportedly executed by Stoecker. These documents are referenced as Exhibits A–F and attached to the complaint.

The complaint seeks a determination as to the perfection and validity of Heritage Bank's security interests upon the proceeds of the sale of the res of the land trusts. The complaint also seeks allowance and payment of Heritage Bank's pre-petition and post-petition interest and attorneys' fees pursuant to 11 U.S.C. § 506(b). Heritage Bank alleges that its receipt of several payments has reduced the debt owed by Stoecker to $770,800.07, as of January 2, 1990, plus interest in the amount of $164.09, which continues to accrue daily, plus attorneys' fees and costs. Heritage Bank seeks a judgment in its favor in the amount of $803,289.89 plus interest after July 19, 1990, in the amount of $164.09 per day, plus attorneys' fees and costs.

In his amended answer, the Trustee denies many of the substantive allegations contained in the complaint. In particular, the Trustee denies that the underlying promissory notes were executed by Stoecker and that the copies attached as exhibits to the complaint are true and correct. The Trustee disputes that Stoecker's outstanding debt to Heritage Bank is $770,800.07, due to an erroneous principal calculation. Similarly, the Trustee denies that the Heritage Bank debt is secured by mortgages upon the res of the land trusts, by collateral assignments of the beneficial interests in the referenced land trusts, and that the copies attached as additional exhibits to the complaint are true and correct.

In addition, the Trustee pleads several affirmative defenses, including that the alleged transfers to Heritage Bank were fraudulent pursuant to 11 U.S.C. § 548(a)(2) and voidable under the Illinois Fraudulent Conveyance Act, and hence, avoidable pursuant to Section 544(b) of the Bankruptcy Code. The Trustee further asserts estoppel and lack of authority in Stoecker to secure the loans. Moreover, the Trustee brings separate counterclaims against Heritage Bank for breach of fiduciary duty and for a declaratory judgment that the line of credit mortgage is void.[2] The Trustee's first counterclaim seems to relate to some of the same documentation concerning the land trusts referenced in the complaint because some, but not all, of the exhibits referred to in the counterclaims are attached to the complaint.[3] The thrust of the remaining counterclaim appears to be that Stoecker converted Grabill's property to his own use by utilizing

1. Many of the facts, background and some of the history of this Chapter 11 case are contained in earlier Opinions of the Court. *See In re Grabill Corp.*, 110 B.R. 356 (Bankr.N.D.Ill.1990); *In re Grabill Corp.*, 103 B.R. 996 (Bankr.N.D.Ill. 1989). The pleadings also reference at least two other Illinois land trusts at Heritage Bank, Nos. 86–2766 and 86–2855, whose trust *res* have been sold and from which proceeds Heritage Bank has received payments. These are not in direct issue in this matter and will not be further discussed herein.

2. In his response to the motions, the Trustee has consented to the dismissal of Count II of his counterclaim. Accordingly, the Court will not further discuss Count II of the counterclaims.

3. Some of those exhibit copies were denied to be true and correct in the Trustee's amended answer. Same, however, are asserted to be true and correct copies for purposes of the counterclaim. The Court's confusion is compounded by reference in the counterclaim to additional exhibits (Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9 and 10) which were in fact not attached to either the original or amended counterclaim, but were attached to the judge's copy of the original answer and counterclaim.

that corporation's beneficial interests in the subject land trusts, without proper authorization from Grabill, to secure his personal loans from Heritage Bank, and that Heritage Bank knew of and permitted same, thereby violating its fiduciary duties as the trustee under both land trusts.[4]

The Trustee asserts that the Grabill estate should recover actual damages of $1.55 million regarding the Westbank land trust, actual damages in the amount of the Grabill land trust assets not to exceed the amount allegedly due Heritage Bank totalling $3 million, and also treble damages as an award of punitive damages against Heritage Bank for its claimed willful and wanton conduct in so breaching its fiduciary duties as alleged by the Trustee. The pleadings allege additional history concerning the two land trusts which provides helpful background to the dispute at bar.

### B. THE WESTBANK TRUST BACKGROUND

The pleadings contend that on September 24, 1985, an Illinois land trust described as Land Trust No. 85–2606 (the "Westbank Trust") naming Grabill and/or Stoecker as beneficiary and Heritage Bank as trustee was created. On February 5, 1987, Stoecker allegedly executed an Assignment of Beneficial Interest in the Westbank Trust ("Assignment of the Westbank Trust") to his wife, Grace Stoecker. The Assignment of the Westbank Trust to Grace Stoecker was claimed to have been exempt from taxation under Section 4(e) of the Illinois Real Estate Transfer Act, Ill.Rev.Stat. ch. 120, para. 1004(e) (1987).[5] On June 16, 1987, Heritage Bank approved the Assignment of the Westbank Trust to Grace Stoecker upon the sole direction of Stoecker.

Thereafter, on June 22, 1988, Grace Stoecker purportedly reassigned the beneficial interest in the Westbank Trust to Stoecker as a gift to him with no consideration to Grabill. Heritage Bank, as trustee

of the Westbank Trust, accepted the Assignment of the Westbank Trust to Stoecker on December 29, 1988. All of these transfers between the Stoeckers were supposedly made without the consent of Grabill and without any consideration paid it. Subsequently, on December 30, 1988, Stoecker executed an Assignment Under Land Trust ("Second Assignment of the Westbank Trust") by which Stoecker and Grabill purported to collaterally assign to Westbank a security interest in the Westbank Trust. Heritage Bank, as trustee of the Westbank Trust, allegedly accepted the Second Assignment of the Westbank Trust on January 3, 1989. The collateral Assignment of the Westbank Trust was executed as security for a $2.5 million loan from Westbank to Stoecker. These transfers are evidenced by Exhibits 4–10 attached to the judge's copy of the original counterclaims.

### C. THE GRABILL TRUST BACKGROUND

The pleadings further contend that on February 10, 1986, an Illinois land trust described as Land Trust No. 86–2676 (the "Grabill Trust") naming Patricia M. Gilbert Enterprises, Ltd., ("Gilbert") as sole beneficiary and Heritage Bank as trustee was created (Trustee's Exhibit 1). Thereafter, on February 14, 1986, Gilbert purportedly assigned all of its rights, powers, privileges and beneficial interest in the Grabill Trust to Grabill (Trustee's Exhibit 2). On July 23, 1987, Stoecker executed a Land Trust Security Agreement (the "First Assignment") by which Stoecker purported to assign to Heritage Bank a security interest in Stoecker's beneficial interest in the Grabill Trust (Complaint Exhibit D, p. 1). The First Assignment was supposedly executed as security for a $2.5 million loan from Heritage Bank to Stoecker, individually, for the stated purpose of acquiring "working capital". Stoecker executed a promis-

---

**4.** The history of both land trusts is hereinafter discussed.

**5.** That statute provides that transfers of real property interests or beneficial interests in Illi-

nois land trusts are exempt from such tax if the actual consideration paid for the conveyance is less than $100.00.

sory note evidencing the loan on July 23, 1987, in the principal amount of $2.5 million in favor of Heritage Bank (Complaint Exhibit A). In addition, on July 23, 1987, Heritage Bank as trustee under the Grabill Trust executed a Trust Deed [6] (Complaint Exhibit C) in the amount of $2.5 million and an Assignment of Rents [7] (Complaint Exhibit E) by which Heritage Bank, as land trustee, purported to grant Heritage Bank, as lender, a security interest in the properties which were the *res* of the Grabill Trust as security for the $2.5 million note.

Subsequently, on July 24, 1987, Stoecker, as president and chairman of the board of Grabill, executed a hypothecation agreement entitled "Owner's Consent" (Complaint Exhibit F). This hypothecation agreement authorized Stoecker to "deliver, pledge, assign and transfer to [Heritage Bank] all or any part of the [Collateral Assignment of Beneficial Interest in the Grabill Trust] belonging to Grabill under the Grabill Trust. The hypothecation agreement was executed by Grabill "in consideration of any loan or other financial accommodation ... at any time made or granted to William J. Stoecker". Same was executed as part of the loan transaction involving the $2.5 million note.

On December 19, 1988, Stoecker executed a Land Trust Security Agreement (the "Second Assignment") by which Stoecker purported to collaterally assign to Heritage Bank, as lender, a security interest in Stoecker's beneficial interest in the Grabill Trust (Complaint Exhibit D, p. 2). Heritage Bank, as land trustee of the Grabill Trust, accepted same on December 19, 1988. The Second Assignment of the Grabill Trust was executed as security for a $500,000 loan from Heritage Bank to Stoecker, individually, for the stated purpose of "the sale of business assets". Stoecker executed a promissory note dated December 19, 1988, in favor of Heritage Bank in the principal amount of $500,000 (Complaint Exhibit B).

### D. ADDITIONAL BACKGROUND ALLEGATIONS

The pleadings further assert that approximately $521,300.61 of the proceeds of Heritage Bank's loans to Stoecker came to Grabill's subsidiaries, Foxxford Group, Ltd. ("Foxxford") and Windsor–Hamilton, Ltd. ("Windsor–Hamilton"). The loans were allegedly secured by collateral which has a market value of $4,025,000 ($1,900,000—65 acres in Lemont, Illinois; $525,000—15028 S. Cicero, Chicago, Illinois; $50,000—Cook's Cupboard parking lot; $180,000—jewelry; and $1,425,000—14930 S. Cicero, Chicago, Illinois). Heritage Bank has supposedly collected $2,600,000 (less expenses of sale, prior liens and real estate taxes) from the sale of Stoecker estate assets and seeks to collect approximately $803,289.89, plus interest, costs, and fees from Grabill estate assets.

The *res* of the Grabill Trust allegedly consists of four parcels of real property located in Chicago, Illinois: (1) a three story, 16,500 square foot office building located at 14930 South Cicero Avenue; (2) two vacant lots adjacent to and north of 14930 South Cicero Avenue; (3) a landlocked vacant parcel of property located behind 14816 South Cicero Avenue; and (4) a residence at 14816 South Cicero Avenue. The properties which were the *res* of other land trusts which also secured the Heritage Bank loans to Stoecker have been sold pursuant to order of this Court. Heritage Bank has allegedly received payments from those sales as well as a sale of certain pledged jewelry. Pursuant to an order of the Court dated July 11, 1990, the Trustee was authorized to sell the *res* of the Grabill Trust for $1,425,000. Moreover, by order of the Court, the proceeds of that sale are being held by the Trustee in a separate account pending resolution of this matter.

### III. APPLICABLE STANDARDS

### A. SUMMARY JUDGMENT

In order to prevail on a motion for summary judgment, the movant must meet the

---

**6.** The Trust Deed was recorded on July 29, 1987 as Document No. 87415638.

**7.** The Assignment of Rents was recorded on July 29, 1987 as Document No. 87415639.

statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part:

> [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Donald v. Polk County*, 836 F.2d 376, 378–379 (7th Cir. 1988).

In 1986, the Supreme Court decided a trilogy of cases which encourage the use of summary judgment as a means to dispose of factually unsupported claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute." *Farries v. Stanadyne/Chicago Div.*, 832 F.2d 374, 378 (7th Cir.1987) (quoting *Wainwright Bank & Trust Co. v. Railroadmens Federal Sav. & Loan Ass'n*, 806 F.2d 146, 149 (7th Cir.1986)). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; *Matsushita*, 475 U.S. at 585–586, 106 S.Ct. at 1355–56. There is no genuine issue for trial if the record, taken as a whole, does not lead a rational trier of fact to find for the nonmoving party. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250, 106 S.Ct. at 2511 (citations omitted); *see also Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir.1987), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings, rather its response must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53; *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *Patrick v. Jasper County*, 901 F.2d 561, 564–566 (7th Cir.1990). Moreover, all reasonable inferences to be drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Davis v. City of Chicago*, 841 F.2d 186, 189 (7th Cir. 1988); *Marine Bank, Nat. Ass'n v. Meat Counter, Inc.*, 826 F.2d 1577, 1579 (7th Cir.1987); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987); *Bartman v. Allis–Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir.1986), *cert. denied*, 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987); *In re Calisoff*, 92 B.R. 346, 350–351 (Bankr.N.D.Ill.1988). Furthermore, the existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under the applicable law. *Donald v. Polk County*, 836 F.2d at 379; *Wallace v. Greer*, 821 F.2d 1274, 1276 (7th Cir.1987); *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.1983) (en banc), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983).

Rule 56(d) provides for the situation when judgment is not rendered upon the whole case, but only a portion thereof. The relief sought pursuant to subsection d is styled partial summary judgment. Partial summary judgment is available only to dispose of one or more counts of the complaint in their entirety. *Commonwealth Ins. Co. v. O. Henry Tent & Awning Co.*, 266 F.2d 200, 201 (7th Cir.1959); *Biggins v. Oltmer Iron Works*, 154 F.2d 214, 216–217 (7th Cir.1946); *Quintana v. Byrd*, 669 F.Supp. 849, 850 (N.D.Ill.1987); *Arado v. General Fire Extinguisher Corp.*, 626 F.Supp. 506, 509 (N.D.Ill.1985); *Capitol Records, Inc. v. Progress Record Distributing, Inc.*, 106 F.R.D. 25, 28 (N.D.Ill.

1985); *In re Network 90°, Inc.*, 98 B.R. 821, 823 (Bankr.N.D.Ill.1989); *Strandell v. Jackson County*, 648 F.Supp. 126, 136 (S.D.Ill.1986). Rule 56(d) provides a method whereby a court can narrow issues and facts for trial after denying in whole or in part a motion properly brought under Rule 56. *Capitol Records, Inc. v. Progress Record Distributing, Inc.*, 106 F.R.D. at 29.

Rule 12 of the General Rules of the United States District Court for the Northern District of Illinois adopted by the General Order of the Bankruptcy Court on May 6, 1986, requires that the party moving for summary judgment file a detailed statement of material facts as to which they contend there is no genuine issue. The statement must include specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the summary judgment relief sought. Rule 12 also requires that the party opposing the motion file a statement of material facts as to which there is a genuine issue. If the opposing party's Rule 12 statement fails to deny the facts set forth in the movant's statement, those facts will be deemed admitted.

### B. EVIDENCE SUBMITTED

Heritage Bank has filed its Rule 12 statement and a supporting memorandum of law. The only evidence submitted by it, in addition to Exhibits A–F attached to the complaint, is an affidavit from Howard Kockler ("Kockler"). Kockler is the senior vice president of Heritage Bank, and is primarily responsible for its loan accounts with Stoecker. Heritage Bank's records are maintained under his supervision and control. Nothing more of substance is contained in Kockler's affidavit. Attached thereto, however, were copies of certain of Heritage Bank's regularly maintained business records marked A–O, without explanation by Kockler of what the contents purport to show. Thus, the Kockler affidavit is remarkable for the paucity of facts contained therein, in contrast to the arguments made by Heritage Bank's attorneys regarding the significance of the exhibits. The exhibits attached to the affidavit consist of:

statements of account; checks drawn on Heritage Bank; credit, debit, and wire transfer memos; and other related documents involving Stoecker's accounts, loans and other transactions with Heritage Bank. Neither the affidavit, nor any other evidence submitted to the Court clearly establishes the alleged facts surrounding Grabill's complicated financial transactions.

The Trustee, on the other hand, has failed to file his Rule 12 statement. Consequently, some of the facts set forth in Heritage Bank's Rule 12 statement are deemed admitted for purposes of the motion for summary judgment. In the main, these facts relate to the existence and authenticity of the documents supporting the complaint (Exhibits A–F). The Trustee filed a response in opposition to the motion for summary judgment, which includes a memorandum opposing the motion to dismiss the counterclaim. The only evidence submitted by the Trustee in opposition to the summary judgment motion is an affidavit from Joan Garvey ("Garvey"). She is the controller of Grabill. According to Garvey, Grabill's records reflect that Citibank was not a significant creditor of Grabill from July 1, 1987 through 1988. Furthermore, Garvey averred that Grabill's records reflect that Grabill held no interest in Valley American Bank, Citibank, or Mid American National Bank during this period. Additionally, Garvey stated that Grabill's records indicate that Grabill Aerospace was not a subsidiary of Grabill during such period. As of July 1, 1987, Windsor–Hamilton and Foxxford were subsidiaries of Grabill. Lastly, Garvey's affidavit asserted that Grabill's corporate bylaws provide that "no loans shall be contracted on behalf of the corporation and no evidence of indebtedness shall be issued in its name unless authorized by a resolution of the board of directors."

Surprisingly, the record in this adversary proceeding is devoid of any additional evidence. No deposition testimony, supplementary affidavits or other documentary evidence has been submitted by either party. Although the pleadings filed in support of the motion for summary judgment make

strong arguments and cite numerous legal authorities, the Court has not been furnished any other proof showing the computations from which Heritage Bank derives its claimed amounts due.

## C. MOTION TO DISMISS

Notice pleadings filed under Rule 8 of the Federal Rules of Civil Procedure should be liberally construed. *Sutliff, Inc. v. Donovan Cos.,* 727 F.2d 648, 653 (7th Cir. 1984). Among the exceptions to the general rule on notice pleading is Rule 9(b) and its bankruptcy analog Rule 7009, which require only fraud and mistake to be pleaded with particularity, in contrast to malice, intent, and knowledge, which may be averred generally. In order for Heritage Bank to prevail on the motion to dismiss, it must clearly appear from the pleadings that the Trustee can prove no set of facts in support of his claims which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Meriwether v. Faulkner,* 821 F.2d 408, 411 (7th Cir.1987), *cert. denied,* 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987); *Doe v. St. Joseph's Hospital,* 788 F.2d 411, 414 (7th Cir.1986); *Swanson v. Wabash, Inc.,* 577 F.Supp. 1308 (N.D.Ill.1983). The Seventh Circuit has emphasized that "[d]espite their liberality on pleading matters ... the federal rules still require that a complaint allege facts that, if proven, would provide an adequate basis for each claim." *Gray v. County of Dane,* 854 F.2d 179, 182 (7th Cir.1988). It is well established that alleging mere legal conclusions, without a factual predicate, is inadequate to state a claim for relief. *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). Moreover, the Court must take as true all well-pleaded material facts in the counterclaim and must view these facts and all reasonable inferences which may be drawn from them in a light most favorable to the Trustee. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Infinity Broadcasting Corp. v. Prudential Ins. Co.,* 869 F.2d 1073, 1075 (7th Cir.1989); *Corcoran v. Chicago Park Dist.,* 875 F.2d 609, 611 (7th Cir.1989);

*Marmon Group, Inc. v. Rexnord, Inc.,* 822 F.2d 31, 34 (7th Cir.1987); *Meriwether v. Faulkner,* 821 F.2d at 410; *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). The issue is not whether the Trustee will ultimately prevail, but whether the Trustee has pleaded a cause of action sufficient to entitle him to offer evidence in support of his claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

## IV. DISCUSSION

### A. MOTION FOR SUMMARY JUDGMENT

#### 1. *11 U.S.C. § 506(b)*

Heritage Bank seeks summary judgment on its one count complaint, asserting that it holds an oversecured claim as defined in 11 U.S.C. § 506(b). Section 506(b) provides in relevant part:

> To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b).

■ In order to sustain its cause of action based on section 506(b), Heritage Bank must show all of the following elements by a preponderance of the evidence: (1) the amount of its claimed indebtedness owed, but unpaid, by Stoecker; (2) that its indebtedness, as of the petition date, was secured by perfected and unavoidable mortgage or other liens on the real property and perfected security interests on the personal property and proceeds thereof; (3) that its claims are traceable to the proceeds of the sale of the *res* of the land trusts and the beneficial interests therein; (4) what the collateral value was (or in this case the sale price(s) obtained therefore); and (5) the value of such property is greater than the amount of its allowed claim, after any re-

covery by the Trustee for the reasonable, necessary costs and expenses of preserving, or disposing of such property under section 506(c). If Heritage Bank's claim is proven, it can recover post-petition interest and any reasonable fees, costs, or charges provided for in the agreement(s) under which the claim arose. *See e.g., In re Lampert,* 61 B.R. 785, 787 (Bankr.W.D. Wis.1986); *In re Horizon Machine & Engineering Corp.,* 54 B.R. 669, 670 (Bankr. N.D.Ill.1985). The ultimate burden remains on Heritage Bank, consisting of proof of the amount of its claims, a showing of entitlement to post-petition interest through demonstrative evidence that its claim was oversecured, to what extent, and for what period of time. *See In re Mitchell,* 81 B.R. 171, 173–174 (Bankr.D.Colo. 1988); *In re Bradley,* 94 B.R. 563, 567 (Bankr.N.D.Iowa 1988).

■ Claims filed in bankruptcy cases are prima facie presumed valid under 11 U.S.C. § 502(a) and are prima facie proof of their validity under Bankruptcy Rule 3001(f). *See In re Schaumburg Hotel Owner Ltd. Partnership,* 97 B.R. 943, 950 (Bankr.N.D. Ill.1989); *In re Fogelberg,* 79 B.R. 368, 372 (Bankr.N.D.Ill.1986). Under section 502(a), Heritage Bank's claim would be deemed allowed had not the Trustee objected. Such objection does not obviate the evidentiary effect of Bankruptcy Rule 3001(f) because claim objectors assume the burden of going forward with evidence supporting the objection to the validity and the amount of the claim. Objectors to claims are required to produce evidence of a probative force equal to the allegations of the creditor's proof of claim.

Objections to allowance of proofs of claim are normally governed by Bankruptcy Rule 3007. It provides that if same is joined with a demand for relief of the kind specified in Bankruptcy Rule 7001, it becomes an adversary proceeding. Because the Trustee has filed the counterclaim, as well as his denial of the numerous allegations of Heritage Bank's claims asserted herein, an adversary proceeding was probably inevitably necessitated. *See In re America's Shopping Channel, Inc.,* 110

B.R. 5 (Bankr.S.D.Cal.1990). However, neither party has submitted Heritage Bank's proof of claim, if same was filed, as part of this record. Accordingly, Heritage Bank cannot avail itself of the evidentiary benefits of section 502(a) and Bankruptcy Rule 3001(f) for purposes of the pending motion for summary judgment because no proof of claim was submitted as part of the record in this summary judgment proceeding.

■ Although Heritage Bank has made vigorous arguments in support of its position, very little by way of evidence has been submitted. Even if the proofs clearly showed Heritage Bank's position to be secured, perfected, and unavoidable by the Trustee, Heritage Bank has not demonstrated the amount by which it is oversecured or proven the computed pre-petition and post-petition interest, and the basis thereof, or any of the amounts of its claimed attorney's fees and costs. Although these matters may be easily susceptible of proof, none has been furnished.

At best, the documentary evidence furnished by Heritage Bank shows a colorable claim to secured status in the Grabill Trust *res* by virtue of the recorded trust deeds, assignments of rents and the beneficial interests by virtue of the security agreements, collateral and rent assignments and owner's consent purportedly executed by Stoecker. The Court cannot properly enter summary judgment in favor of Heritage Bank on the record before it. Able arguments and well-drawn pleadings do not rise to the requisite level of evidence needed to afford the Court a proper basis for allowing the relief sought. Furthermore, material questions of fact regarding several elements of the Trustee's affirmative defenses of estoppel, lack of authority from Grabill to Stoecker, and assignment to Heritage Bank of only Stoecker's interest in the Grabill Trust are not resolved under the motion and supporting pleadings.

Heritage Bank and the Trustee agree that the record is incomplete with respect to all advances made by Heritage Bank, except those indisputably made to Grabill subsidiaries: $371,300.61 to Foxxford and $150,000 to Windsor–Hamilton. Heritage

Bank contends that these two transfers are sufficient grounds for the entry of summary judgment. Heritage Bank asserts that it has collected approximately $2,400,000 of expenses from Stoecker's assets and now seeks to collect approximately $800,000 from the proceeds of the sale of a Grabill asset: 14930 S. Cicero, Oak Forest, Illinois. No comprehensive statement of account has been furnished to the Court. More of an understandable accounting is required, given the complex of collateral and various dates of the sales thereof and payments to Heritage Bank. The Court cannot search through or reconstruct the voluminous record in the bankruptcy case *sua sponte* to derive the correct figures. Although the motion for summary judgment is denied, further discussion of the defenses raised by the Trustee in opposition to the relief sought by Heritage Bank will serve to narrow the remaining issues to be tried and focus the parties in their proofs. Thus, extended discussion of these theories in light of the record made to date is helpful.

### B. THE TRUSTEE'S AFFIRMATIVE DEFENSES

1. *Fraudulent Conveyance Defense*

The Trustee's first affirmative defense to the complaint alleges that the transfer of the beneficial interest in the Grabill Trust to Heritage Bank, as collateral for the loan made to Stoecker, constitutes a fraudulent conveyance pursuant to section 548(a)(2), as Grabill received less than reasonably equivalent value in consideration of that transfer. Section 548 provides in pertinent part:

(a) The trustee may avoid any transfers of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

11 U.S.C. § 548(a)(2).

This provision sets forth four elements on which the Trustee has the burden of proof before he may set aside a transfer of property: (1) Grabill had an interest in the property transferred; (2) Grabill was insolvent at the time of the transfer or became insolvent as a result of the transfer; (3) the transfer occurred within one year of the filing of the bankruptcy petition; and (4) the transfer was for less than a reasonably equivalent value. *See In re Bundles*, 856 F.2d 815, 817 (7th Cir.1988); *In re Ohio Corrugating Co.*, 70 B.R. 920, 926 (Bankr. N.D.Ohio 1987). *Bundles* mandates a case-by-case approach, based on all the facts in determining "reasonably equivalent value." *Id.* at 824.

Section 548(a) applies only to a transfer of property within one year of the date the bankruptcy petition was filed. It is undisputed that the transfer and recording of the trust deed and assignment of rents on July 29, 1987, and the first collateral assignment and acceptance of the beneficial interest in the Grabill Trust, as security for the $2,500,000 promissory note dated July 23, 1987, was more than one year prior to the February 21, 1989 date of the filing of the petition. Consequently, the transfers securing this note cannot be avoided as fraudulent transfers under section 548(a)(2). Only the second collateral assignment and acceptance of the beneficial interest in the Grabill Trust falls within the one year limitation period, which is the transfer of property to secure the $500,000 promissory note dated December 19, 1988.

The essence of the Trustee's argument is that Grabill received less than reasonably equivalent value in exchange for that transfer to secure the $500,000 note because Stoecker forwarded the bulk of the proceeds from the $500,000 note to Citibank in New York and Mid American National Bank in Bowling Green, Ohio. The Trustee argues that Grabill did not benefit from the transfer of the proceeds to Citibank and Mid American National Bank. The Trustee claims that Stoecker's pay-

ment to Citibank was more likely in satisfaction of an obligation of Stoecker individually. The Trustee maintains that a material issue of fact remains as to whether Grabill received any benefit from the $500,000 note. Heritage Bank does not dispute that Grabill and Stoecker were both insolvent on the dates the liens were purportedly created.

An element in dispute is whether that transfer in December, 1988, was for less than reasonably equivalent value. The Bankruptcy Code does not define "reasonably equivalent value." The Second Circuit has noted that the term means more than the "consideration" necessary to support a contract. *Rubin v. Manufacturers Hanover Trust Co.,* 661 F.2d 979, 991 (2d Cir. 1981); *see also In re Nelsen,* 24 B.R. 701, 702 (Bankr.D.Ore.1982) (noting that the meaning of "fair value" under section 548(a)(2)(A) is distinct from the contract principle of consideration). The legislative history of section 548 does not indicate the reason for this requirement. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 89 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 375 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5875, 6331. Apparently the purpose is to limit the applicability of section 548(a)(2) to those transactions that deplete the debtor's assets. *See In re Minnesota Utility Contracting, Inc.,* 110 B.R. 414, 420 (D.Minn.1990) (the rationale of this provision is to conserve the debtor's estate for the benefit of creditors); *In re Butcher,* 58 B.R. 128, 130 (Bankr.E.D. Tenn.1986).

Instead, the Bankruptcy Code defines the term "value" for purposes of the fraudulent transfer provision as "property, or satisfaction or securing of a present or antecedent debt of the debtor...." 11 U.S.C. § 548(d)(2)(A). "Reasonable equivalence" requires a comparison of the value of what went out with the value of what was received. *See e.g., In re Nacol,* 36 B.R. 566, 568 (Bankr.M.D.Fla.1983); *In re Euro–Swiss International Corp.,* 33 B.R. 872, 885 (Bankr.S.D.N.Y.1983) ("Reasonably equivalent value requires only a "full and adequate" consideration, not a penny-

for-penny exchange"). Fair market value at the time of the transfer should control. *See In re Smith,* 24 B.R. 19, 23 (Bankr.W. D.N.C.1982); *see also* 1 Ginsberg, *Bankruptcy: Text, Statutes, Rules,* § 9.03[c] at 686 (2d ed. 1989 and 1990 Supp.). In *In re Minnesota Utility Contracting, Inc.,* 101 B.R. 72 (Bankr.D.Minn.1989), *aff'd in part, rev'd in part, In re Minnesota Utility Contracting, Inc.,* 110 B.R. 414 (D.Minn. 1990), the court characterized the test regarding whether a debtor received reasonably equivalent value as a "balance sheet test" and stated: "[i]f a transfer adversely affects one side of the debtor's balance sheet, then the debtor's balance sheet must reflect a consideration already received of reasonably equivalent value or the transaction must result in a change to the other side of the balance sheet of reasonably equivalent value." 101 B.R. at 85. Whether a transfer is made for reasonably equivalent value is a question of fact to be determined in light of the facts presented in each particular case. *In re Ozark Restaurant Equipment Co.,* 850 F.2d 342, 344 (8th Cir.1988).

To sustain his first affirmative defense, the Trustee must prove that Grabill did not receive reasonably equivalent value in that exchange, and that after the transaction, Grabill was insolvent. If the Trustee can prove this, then the question of Stoecker's intent in the transaction is irrelevant. *See In re Chicago Music Corp.,* 36 B.R. 626 (Bankr.N.D.Ill.1984). Section 548(a)(2) requires a plaintiff to allege only constructive fraud or that the debtor received less than a reasonably equivalent value in exchange for the property transferred. The Trustee has the burden of proof on all elements of a transfer sought to be avoided under section 548(a)(2). The Trustee must demonstrate these elements by a preponderance of the evidence. *In re Anchorage Marina, Inc.,* 93 B.R. 686 (Bankr.D.N.D.1988); *In re Warner,* 65 B.R. 512 (Bankr.S.D.Ohio 1986); *see also Wieboldt Stores, Inc. v. Schottenstein,* 94 B.R. 488, 504 (N.D.Ill.1988).

As a general rule, a debtor receives inadequate consideration when he

transfers property for consideration which passes to a third party. *See, e.g., Rubin,* 661 F.2d at 991; *Klein v. Tabatchnick,* 610 F.2d 1043, 1047 (2d Cir.1979); *In re B–F Bldg. Corp.,* 312 F.2d 691, 694 (6th Cir. 1963); *Davis v. Hudson Trust Co.,* 28 F.2d 740, 742 (3d Cir.1928), *cert. denied,* 278 U.S. 655, 49 S.Ct. 179, 73 L.Ed. 565 (1928); *In re Ear, Nose & Throat Surgeons, Inc.,* 49 B.R. 316, 320 (Bankr.D.Mass.1985); *In re Burbank Generators, Inc.,* 48 B.R. 204, 206 (Bankr.C.D.Cal.1985); *In re Holly Hill Medical Center, Inc.,* 44 B.R. 253, 255 (Bankr.M.D.Fla.1984); *In re Royal Crown Bottlers, Inc.,* 23 B.R. 28, 30 (Bankr.N.D. Ala.1982). Moreover, consideration passing from a subsidiary to a parent corporation will be presumed to be nominal. *Royal Crown Bottlers,* 23 B.R. at 30. In the *Rubin* case, the court articulated the rationale for this presumption:

> [I]f the debt secured by the transaction is not the debtor's own, then his giving of security will deplete his estate without bringing in a corresponding value from which his creditors can benefit, and his creditors will suffer just as they would if the debtor had simply made a gift of his property or obligation.

*Id.* at 991.

It is possible, however, that a debtor might benefit indirectly as a result of the consideration received by the third party. The test is the measure of the economic benefit that accrues to the debtor. *Rubin,* 661 F.2d at 993.

The cases finding indirect benefit indicate that the benefit received must be fairly concrete. *See Mayo v. Pioneer Bank & Trust Co.,* 270 F.2d 823 (5th Cir.1959), *cert. denied,* 362 U.S. 962, 80 S.Ct. 878, 4 L.Ed.2d 877 (1960) (corporate debtor's repayment of loan to stockholder was fair consideration where stockholder contributed loan proceeds to corporation's capital); *Barr & Creelman Mill & Plumbing Supply Co. v. Zoller,* 109 F.2d 924, 926 (2d Cir.1940) (debtor's discharge of a third person's debt constituted fair exchange for discharge of debtor's own debt); *Klein v. Tabatchnick,* 610 F.2d at 1047 (corporation's grant of security interest in corporate property was fair consideration for

secured party's pledge of personal property as collateral for bank loan to stockholder, who in turn loaned proceeds to corporations).

Any economic benefits derived from the transaction may be considered. *See, e.g., Rubin* 661 F.2d at 993 (collateral benefits of debtor's guarantees of loans to affiliated corporation might support finding of fair consideration); *Holly Hill,* 44 B.R. at 254–255 (interest payments made by debtor on loan to affiliated corporation were supported by a reasonably equivalent value when affiliate voluntarily used the loan to advance the debtor's operations); *In re Jones,* 37 B.R. 969, 975 (Bankr.N.D. Tex.1984) (trickle-down benefits to debtor-guarantor from loan made to affiliated corporation constituted a reasonably equivalent value); *In re Alexander Dispos–Haul Systems, Inc.,* 36 B.R. 612, 616–617 (Bankr. D.Ore.1983) (benefits voluntarily bestowed upon debtor by principal shareholder after debtor guaranteed obligations of shareholder constituted a reasonably equivalent value).

In *Johnson v. First Nat. Bank,* 81 B.R. 87 (Bankr.N.D.Fla.1987), the debtors sought to avoid a mortgage given to secure a loan to their wholly-owned corporation on the grounds that it was a fraudulent conveyance. The *Johnson* court rejected this argument and stated:

> In bringing this action the [debtors] contend that they did not receive reasonably equivalent value in exchange for the transfer of the mortgage on their house since it was the corporation and not themselves who received all of the loan proceeds. This argument is without merit. It is well settled that a debtor need not benefit directly in order to receive reasonably equivalent value for a transfer. He may benefit indirectly through benefit to a third person. *Williams v. Twin City Co.,* 251 F.2d 678, 681 (9th Cir.1958); *Klein v. Tabatchnick,* 610 F.2d 1043, 1047 (2d Cir.1979); *Rubin v. Manufacturer's Hanover Trust Co.,* 661 F.2d 979, 991 (2d Cir.1981).

*Id.* at 88.

The *Johnson* court further stated: "[a] loan to a subsidiary corporation will almost

always confer a benefit on the parent or stockholders of the corporation since they are the indirect beneficiaries of anything of value coming to the corporation." *Id.* at 89.

When property is transferred for the purpose of security, it is sufficient that the value of the property secured not be disproportionate to the amount of the debt secured. *In re Abraham,* 33 B.R. 963, 968 (Bankr.M.D.Fla.1983). Hence, a transfer to a third party can be considered fair consideration for the debtor's conveyance. *Rubin,* 661 F.2d 979. The *Rubin* court stated, "[i]f the consideration given to the third person has ultimately landed in the debtor's hands, or if the giving of the consideration to the third person otherwise confers an economic benefit upon the debtor, then the debtor's net worth has been preserved...." *Id.* at 991. Moreover, in *Klein v. Tabatchnick,* 610 F.2d 1043 (2d Cir.1979), the court noted, "[b]enefit to a debtor need not be direct; it may come indirectly through benefit to a third per-

son." *Id.* at 1047. Furthermore, *Minnesota Utility Contracting, Inc.,* 110 B.R. 414 (D.Minn.1990) held that "[c]onsideration to a third party which confers "economic benefit" on the debtor may establish fair consideration." *Id.* at 420.

Thus, if the proceeds of Heritage Bank's $500,000 loan were in fact transferred to accounts of Grabill subsidiaries in an aggregate amount substantially exceeding the amount Heritage Bank seeks to recover from the proceeds of the sale of the property held in the Grabill Trust, the Trustee's defense that that transfer was for less than reasonably equivalent value appears unfounded.

## 2. Illinois Fraudulent Conveyance Act Defense

The Trustee further claims that the alleged liens to secure the $2,500,000 note and the $500,000 note are voidable, pursuant to the Illinois Fraudulent Conveyance Act, Ill.Rev.Stat. ch. 59, para. 4 (1989)[8]

---

**8.** On January 1, 1990, the Illinois legislature recently adopted the Uniform Fraudulent Transfer Act (the "UFTA") which supersedes Ill.Rev. Stat. ch. 59, § 4 (1989). *See* Public Act 86–814 (codified in Smith–Hurd Illinois Annotated Statutes ch. 59, ¶¶ 101–112). The UFTA provides that it is effective as of January 1, 1990. The UFTA does not specifically address whether it is to be applied to cases which were pending as of its effective date, but that involve allegations that earlier transfers were fraudulent conveyances. In general, there is a presumption that statutory provisions apply only prospectively to conduct that occurs on or after the statute's effective date. In *Allied Corp. v. Acme Solvents Reclaiming, Inc.,* 691 F.Supp. 1100 (N.D.Ill. 1988), the court stated:

The effective date of a statute implicates conduct taken on or after that date. Application of the statute to such conduct is deemed prospective. The effective date may also serve to impose the dictates of the new statute upon cases pending on or after the date, regardless of when the conduct which is the subject of the cases occurred. Application of a new statute to conduct occurring before the effective date constitutes retroactive application of the statute.

Absent clear and unequivocal statements by Congress to the contrary, legislative enactments are presumed to operate prospectively and not retrospectively. *United States v. Security Indus. Bank,* 459 U.S. 70, 79, 103 S.Ct. 407, 412–13, 74 L.Ed.2d 235 (1982). As our Court of Appeals has implicitly recognized,

this proposition is not at odds with the Supreme Court's 1974 rejection in *Bradley v. School Board of City of Richmond,* 416 U.S. 696, 715, 94 S.Ct. 2006, 2018, 40 L.Ed.2d 476 (1974), of the presumption against retroactivity. (footnote omitted) *United States v. Kairys,* 782 F.2d 1374, 1381 (7th Cir.1986). In *Bradley,* the Supreme Court used a vested rights or manifest injustice standard in determining whether it should apply retroactively the statutory provision before it. The Seventh Circuit in *Kairys* combined the *Security Indus. Bank* and *Bradley* approaches by applying the presumption against retroactivity while recognizing that the presumption "is even more appropriate when the statute affects vested rights." *Kairys,* 782 F.2d at 1381, citing *Bradley,* 416 U.S. at 720–21, 94 S.Ct. at 2020–21. *Id.* at 1110.

Where legislative intent is clearly to make a new law retroactive to pending cases on prior conduct, that intent will be applied. *In re Busick,* 831 F.2d 745, 748 (7th Cir.1987). There is no indication from the Illinois legislature that the new provisions of UFTA should apply to transfers that occurred before its effective date of January 1, 1990. Thus, the Court applies chapter 59, § 4, the statutory provision in effect in 1987 and 1988, the dates Stoecker pledged the beneficial interests in the Grabill Trust and the Westbank Trust as security for the $2.5 million note and the $500,000 note.

under 11 U.S.C. § 544(b).[9] The Illinois Fraudulent Conveyance Act provides:

> Every gift, grant, conveyance, assignment or transfer of, or charge upon any estate, real or personal, or right or thing in action, or any rent or profit thereof, made with the intent to disturb, delay, hinder or defraud creditors or other persons, and every bond or other evidence of debt given, suit commenced, or judgment entered, with like intent, shall be void as against such creditors, purchasers and other persons.

Ill.Rev.Stat. ch. 59, para. 4 (1989).

Under Illinois law, a conveyance by a transferor is subject to challenge if it is either fraudulent in fact, or fraudulent in law. *Tcherepnin v. Franz,* 475 F.Supp. 92, 96 (N.D.Ill.1979); *Harris v. Aimco, Inc.,* 66 Ill.App.3d 60, 62, 22 Ill.Dec. 823, 825, 383 N.E.2d 631, 633 (5th Dist. 1978); *Wilkey v. Wax,* 82 Ill.App.2d 67, 70, 225 N.E.2d 813, 814 (4th Dist.1967); *Second Nat. Bank v. Jones,* 309 Ill.App. 358, 365, 33 N.E.2d 732, 736 (4th Dist.1941). In order to prove fraud in fact, the Trustee must show actual intent to disturb, delay, hinder, or defraud creditors. *Reagan v. Baird,* 140 Ill.App.3d 58, 65, 94 Ill.Dec. 151, 157, 487 N.E.2d 1028, 1034 (4th Dist.1985); *Indiana Nat. Bank v. Gamble,* 612 F.Supp. 1272, 1276 (N.D.Ill.1984).

To sustain a claim of fraud in law, the Trustee must establish the following elements: (1) a voluntary gift; (2) an existing or contemplated indebtedness against Grabill; and (3) the failure of Grabill to retain sufficient property to pay the indebtedness. *Mills v. Susanka,* 394 Ill. 439, 448, 68 N.E.2d 904 (1946); *United States ex rel. Hartigan v. Alaska,* 661 F.Supp. 727, 729 (N.D.Ill.1987); *Indiana Nat. Bank v. Gamble,* 612 F.Supp. at 1276; *Wieboldt,* 94 B.R. at 506; *Tcherepnin,* 475 F.Supp. at 97. Once these elements have been proved, unless rebutted, the presumption of fraud becomes conclusive. *Tcherepnin v. Franz,* 457 F.Supp. 832, 840 (N.D.Ill. 1978).

Under Illinois law, a transfer for no consideration is deemed to be a voluntary gift. *Till v. Till,* 87 Ill.App.2d 358, 361, 231 N.E.2d 641, 643 (1st Dist. 1967). A voluntary transfer which is made without consideration or which directly impairs the rights of creditors "will be regarded as fraudulent in law, irrespective of the honesty of the grantor's motives." *First Security Bank v. Bawoll,* 120 Ill. App.3d 787, 792, 76 Ill.Dec. 54, 59, 458 N.E.2d 193, 198 (2d Dist.1983); *see also Capitol Indemnity Corp. v. Keller,* 717 F.2d 324, 327 (7th Cir.1983) (transfer without consideration constitutes constructive fraud and is void under Illinois law); *Tcherepnin,* 457 F.Supp. at 836 (fraudulent intent immaterial in fraud in law cases). Actual intent to impair creditors is irrelevant. Thus, the presumption of fraud in such cases can only be rebutted if the debtor shows that he retained sufficient property to pay his obligations, or that adequate consideration was given for the transfer. *Tcherepnin,* 457 F.Supp. at 840; *Harris v. Aimco, Inc.,* 66 Ill.App.3d at 62, 22 Ill.Dec. at 825, 383 N.E.2d at 633. At this stage of the proceedings, the Trustee has failed to establish the elements of either fraud in law or fraud in fact because he has not substantiated this affirmative defense with any supporting evidence. The only proof submitted by the Trustee is Garvey's affidavit and the exhibits consisting of the documents attached to the judge's copy of the original counterclaim. These do not clearly or convincingly establish fraud.

### 3. *Breach of Fiduciary Duty Defense and the Motion to Dismiss*

The Trustee's third affirmative defense is based on an estoppel theory, and is factually and legally related to Count I of the counterclaim which Heritage Bank has moved to dismiss. It is therefore appropriate to discuss the defense, the counterclaim and the motion to dismiss jointly. Same are all based upon the Trustee's contention that Heritage Bank breached its fiduciary

---

**9.** 11 U.S.C. § 546(b) empowers a trustee to pursue a fraudulent conveyance action based on state law only if an unsecured creditor who could pursue such a claim actually exists.

duty in accepting the collateral, both real and personal, from the Grabill Trust and Westbank Trust. They are related to the fifth affirmative defense that Stoecker lacked authority to convey Grabill's interests in same. Hence, the Trustee asserts that not only is Heritage Bank estopped from recovery under its complaint, but also liable to the Grabill estate for damages.

Heritage Bank has moved to dismiss Count I of the Trustee's counterclaim on the grounds that the allegations relating to the functions performed by Heritage Bank, as land trustee, in connection with the Grabill Trust and the Westbank Trust, do not give rise to a claim for breach of fiduciary duty against Heritage Bank. The Trustee argues in opposition that Stoecker had no express, implied or apparent authority to encumber Grabill assets to secure his personal loans. Also, that Heritage Bank breached its duty to Grabill in allowing the dissipation of those trust assets without proper corporate authorization by board resolution as required by the Grabill by-laws. The absence of such board resolution is critical to the Trustee's counterclaim, as is the contention that Heritage Bank knew Stoecker was effectively converting the corporation's property, but permitted the transfers. The Trustee further contends that lack of such proper board resolution shows that Stoecker lacked express, implied, and apparent authority from Grabill to use its assets for the unusual and extraordinary acts of securing his personal indebtedness. The Trustee asserts that whether Stoecker's acts were "ordinary" or "extraordinary" are fact specific inquires. Discussion of the basic workings of Illinois land trusts is worthwhile at this point. The fiduciary duties of trustees under Illinois land trusts are the *sine qua non* of the Trustee's third affirmative defense and the remaining counterclaim against Heritage Bank.

a. *Illinois Land Trusts*

The Illinois land trust differs from a conventional trust in that while bare legal title to the real estate, constituting the trust corpus or *res*, is vested in a trustee, all of the remaining incidents of ownership are usually reserved by the trust agreement in the beneficiaries. *See generally* H. Kenoe, *Kenoe, Illinois Land Trusts*, (Ill.Ctng.Legal Educ.1989); A. Haswell and B. Levine, *The Illinois Land Trust: A Fictional Best Seller*, 33 DePaul L.Rev. 277 (1984). Consequently, management, control, operation, income and the power to direct the trustee to mortgage or convey the trust *res* are rights vested in and to be exercised by the beneficiaries. *Robinson v. Walker*, 63 Ill.App.2d 204, 211 N.E.2d 488 (1st Dist.1965). The full legal and equitable title to the real property in the land trust is lodged in the trustee. *Chicago Title & Trust Co. v. Mercantile Trust & Savings Bank*, 300 Ill.App. 329, 20 N.E.2d 992 (1st Dist.1939); *Hargrove v. Gerill Corp.*, 124 Ill.App.3d 924, 80 Ill.Dec. 243, 464 N.E.2d 1226 (2d Dist.1984). All other property rights, including the right to collect rent and the power to deal with the property, are vested in the beneficiary. This entire group of rights reserved to the trust beneficiary, often referred to as the beneficial interest in the land trust, is characterized as personal property by both the trust agreement and the deed in trust. *Pepper Pot II, Inc. v. Imperial Realty Co.*, 133 Ill.App.3d 951, 953–954, 88 Ill.Dec. 929, 931, 479 N.E.2d 949, 951 (1st Dist.1985). The interest of a beneficiary in a land trust is personal property and therefore can be the subject matter of a security interest for the payment of an obligation. *Horney v. Hayes*, 11 Ill.2d 178, 142 N.E.2d 94 (1957); *Ford City Bank & Trust Co. v. Ford City Bank & Trust Co.*, 110 Ill.App.3d 123, 65 Ill.Dec. 678, 441 N.E.2d 1192 (1st Dist. 1982). Co-beneficiaries of land trusts have been held to owe fiduciary duties to each other. *See Wolfe v. Wolfe*, 81 Ill.App.3d 833, 37 Ill.Dec. 18, 401 N.E.2d 1111 (1st Dist.1980).

A land trustee may expose itself to liability where it acts negligently or imprudently in the discharge of its duties under the trust agreement, despite the exculpatory language common to most trust agreements, which *inter alia*, usually provides that a "trustee shall not be required to inquire into the propriety of any such

direction." Illinois law does not require the land trustee to inquire into the propriety of any direction received from the beneficiaries. *See Robinson v. Chicago Nat. Bank*, 32 Ill.App.2d 55, 58, 176 N.E.2d 659, 661 (1st Dist.1961); *IMM Acceptance Corp. v. First Nat. Bank & Trust Co.*, 148 Ill. App.3d 949, 954, 102 Ill.Dec. 232, 234, 499 N.E.2d 1012, 1014 (2d Dist.1986). As the court noted in *Robinson:*

> While legal title to the real estate is held by the trustee, the beneficiaries retain "the power of direction" to deal with the title, to manage and control the property, to receive proceeds from sales or mortgages and all rentals and avails on the property. The trustee agreed to deal with the *res* of the trust only upon the written direction of the beneficiaries or the persons names as having power of direction.... *The trustee is not required to "inquire into the propriety of any direction" received from the authorized persons.* The trustee has no duties in respect to management or control of the property or to pay taxes, insurance or to be responsible for litigation. The only specified duties upon the trustee are to "execute deeds or otherwise deal with the property upon the direction of the beneficiary or other named authorized persons."

32 Ill.App.2d at 58, 176 N.E.2d at 661 (emphasis added); *see also LaSalle National Bank v. Federal Emergency Management Agent*, No. 84 C 9066, 1985 WL 2081 (N.D. Ill. July 29, 1985) (LEXIS, Genfed library, Dist File). ("the trustee is a mere vessel of title. He has no control over the property and can act only according to the beneficiaries' direction.") A land trustee has no control over the property, and thus can only act according to the direction of the beneficiary. *People v. Chicago Title and Trust Co.*, 75 Ill.2d 479, 492, 27 Ill.Dec. 476, 389 N.E.2d 540 (1979). The trustee of a land trust has limited powers and may

act only when and as the beneficiary directs. *Ford City Bank*, 110 Ill.App.3d at 126, 65 Ill.Dec. at 680, 441 N.E.2d at 1194.

▪ The trustee has a fiduciary obligation of loyalty to the beneficiary which flows not from the trust instrument itself, but from the relationship of trustee and beneficiary. *Home Federal Savings & Loan Ass'n v. Zarkin*, 89 Ill.2d 232, 239, 59 Ill.Dec. 897, 432 N.E.2d 841 (1982). "The essence of this relationship is that the former is charged with equitable duties toward the latter. The law imposes the duty, whether the trust instrument mentions it or not." *Id.* at 239, 59 Ill.Dec. 897, 432 N.E.2d 841. *Zarkin* held that when the land trustee is also the mortgagee, the obligations of fidelity and loyalty as trustee are more substantial than the rights of the creditor. As a result, a land trustee making a loan on the security of the property held in its land trust is held to a strict duty of disclosure and fair dealing. Under appropriate circumstances, the land trustee may even be precluded from bidding at its own foreclosure sale and adopting a position adverse to that of its trust beneficiary. *Id.* at 240, 59 Ill.Dec. 897, 432 N.E.2d 841; *see also Ford City Bank*, 110 Ill.App.3d at 126, 65 Ill.Dec. at 681–682, 441 N.E.2d at 1195–1196.

In reaction to wide spread consternation among lenders, land trustees, and others, to the *Zarkin* case, on August 6, 1982, the Illinois legislature enacted the Illinois Land Trust Act, Ill.Rev.Stat. ch. 148, para. 81–84, which provides that land trustees shall have the rights of creditors in dealing with trust beneficiaries in loan transactions.[10] The Land Trust Act, sometimes viewed as anti-*Zarkin* remedial legislation, has been held constitutional, and its retroactive application determined to be enforceable. *Sanelli v. Glenview State Bank*, 108 Ill.2d 1, 90 Ill.Dec. 908, 483 N.E.2d 226 (1985); *Willard v. Northwest Nat. Bank*, 137 Ill. App.3d 255, 92 Ill.Dec. 92, 484 N.E.2d 823

---

**10.** The Land Trust Act provides:

> The fact that a trustee of a land trust is or becomes a secured or unsecured creditor of the land trust, the beneficiaries of the land trust, or a third party whose debt to such creditor is guaranteed by a beneficiary of the land trust, shall not be a breach of, and shall not be deemed evidence of a breach of, any fiduciary duty owed by said trustee to the beneficiaries.

Ill.Rev.Stat. ch. 148, para. 83 (1989).

(1st Dist.1985). It is important to note that subsequent Illinois decisions follow *Zarkin* and hold that the Land Trust Act does not eliminate the land trustee's fiduciary duties altogether. *See Volini v. Dubas*, 190 Ill. App.3d 954, 959, 138 Ill.Dec. 498, 500, 547 N.E.2d 665, 667 (2d Dist.1989). The concept of fiduciary duties owed by land trustees has not been abolished by the Land Trust Act. It did not overturn all of the holdings in *Zarkin.* Rather, the effect of the legislation is to allow land trustees to wear both the hats of a land trustee and a creditor, without that simultaneous dual status constituting a *per se* breach of the land trustee's fiduciary duties. *See Chrysler Credit Corp. v. Louis Joliet Bank & Trust Co.,* 863 F.2d 534 (7th Cir.1988). Moreover, a land trustee's liability for negligent or fraudulent administration of the trust remains. *See Lake City Corp. v. Michigan Ave. Nat. Bank,* 33 Ill.App.3d 100, 337 N.E.2d 251 (1st Dist.1975).

■ A land trustee does not owe a beneficiary all the fiduciary duties a trustee of a conventional trust normally owes a beneficiary, because many of the land trustee's duties, unlike a typical trust relationship, are controlled by the beneficiary. *Volini* 190 Ill.App.3d at 958, 138 Ill.Dec. at 500, 547 N.E.2d at 667. In *South Chicago Savings Bank v. South Chicago Savings Bank,* 178 Ill.App.3d 545, 127 Ill.Dec. 608, 533 N.E.2d 480 (1st Dist.1988), the court explained:

> Generally, a fiduciary relationship may be presumed from the very relationship of the parties, such as that of a trustee and beneficiary. (*Paskas v. Illini Federal Savings & Loan Association* (1982), 109 Ill.App.3d 24, 30, 64 Ill.Dec. 642, 646, 440 N.E.2d 194, 198.) However, the relationship between the parties to a land trust, although labelled as trustee and beneficiary, is not in the nature of a typical trust or fiduciary relationship. Basically, a land trust is a vehicle whereby title to the real property is treated as personalty, thus making the transfer of title to the property much easier. (citation omitted). The trustee, therefore, is merely a nominee to hold title, and all other duties are under the direction and control of the beneficiary to the land trust.

178 Ill.App.3d at 552, 127 Ill.Dec. at 612, 553 N.E.2d at 484.

■ Heritage Bank argues *South Chicago Savings Bank* in support of its position. That case noted that the *Slovick v. All American Bank of Chicago,* 163 Ill. App.3d 741, 114 Ill.Dec. 792, 516 N.E.2d 947 (1st Dist.1987) interpretation of remaining fiduciary duties owed by land trustees to their beneficiaries should be narrowly construed. In *Slovick,* the court held that as a matter of law, the land trustee still owes fiduciary duties, but that particular trustee's actions did not violate any fiduciary duty because it properly acted at the direction of the beneficiaries. *Zarkin* still supports the proposition that if the land trustee is aware that the donee of the power is exercising it improperly, the trustee should refuse to act. If it acts despite such awareness, liability can be asserted against it. *Slovick* at 745, 114 Ill.Dec. 792, 516 N.E.2d 947. The land trustee is required to protect the beneficiaries from abuse of the power of direction where it has knowledge of that fact or where knowledge can be imputed to it. The Court can reasonably infer that the Trustee's counterclaim heavily relies on this dicta from *Slovick, Zarkin,* and *Volini,* notwithstanding the provisions of the Land Trust Act.

The Trustee's third affirmative defense and his counterclaim rest upon the assumption and general allegation inferred from paragraphs 34, 42, 44, and 46 of the counterclaim that Heritage Bank was aware and knew that Stoecker was improperly exercising the powers of direction with respect to both the Grabill Trust and Westbank Trust, notwithstanding the fact that the actions taken by Heritage Bank as land trustee were taken on the written direction of the then holder of the power of direction of the land trusts.

■ Accordingly, under *Zarkin, Slovick,* and *Volini,* the Trustee has effectively alleged that Stoecker was improperly exercising the power of direction to Grabill's detriment and that Heritage Bank

was aware of same. Heritage Bank's contention that it need not look or inquire into the propriety of directions received from Stoecker is in conflict with its apparent lack of Grabill board resolution authorizing Stoecker's actions in dealing with Grabill property, as urged by the Trustee. Stated another way, can Heritage Bank avoid the asserted liability even if it, at all times, knew Stoecker was wrongfully using Grabill assets for his own loans at Heritage Bank, merely because it had signed directions from Stoecker, coupled with the hypothecation agreement and consents purportedly signed by Stoecker on behalf of Grabill, absent a proper Grabill board resolution authorizing Stoecker's actions? This places a heavy burden of proof on the Trustee to establish the fact of who at Heritage Bank knew what Stoecker was allegedly wrongfully doing, and when. Under the *Zarkin, Slovick,* and *Volini* dicta, the Trustee has sufficiently stated a facial claim of breach of fiduciary duty by Heritage Bank in order to survive a motion to dismiss. The Trustee's allegations relative to the functions performed by Heritage Bank as land trustee in connection with the Grabill Trust and the Westbank Trust may give rise to proof of a valid cause of action for breach of fiduciary duty against it.

4. *The Defense of Stoecker's Lack of Authority to Use the Westbank Trust and the Grabill Trust Interests of Grabill*

The Trustee argues in the fifth affirmative defense and the counterclaim that Stoecker did not possess any actual, implied or apparent authority [11] to encumber Grabill's assets because the Grabill bylaws required Stoecker to obtain a resolution of the board of directors to authorize any loans for the corporation. The ultimate issue is whether Stoecker possessed adequate authority, express, implied or apparent to so act, absent the requisite resolution.

As a general rule, a corporate president has the authority to transact the ordinary and usual business of the corporation. *Golen v. Chamberlain Mfg. Corp.,* 139 Ill.App.3d 53, 59, 93 Ill.Dec. 677, 682, 487 N.E.2d 121, 126 (1st Dist.1985). Under Illinois law, however, the president of a corporation has no authority to make a contract which is extraordinary or unusual, such that it would not arise in the corporation's regular course of business, or commit the corporation to significant and unpredictable financial liability. *Bleck v. Cosgrove,* 32 Ill.App.2d 267, 278, 177 N.E.2d 647, 652 (2d Dist.1961); *Southwest Forest Industries, Inc. v. Sharfstein,* 482 F.2d 915, 925 (7th Cir.1972); *Evanston Bank v. ContiCommodity Services,* 623 F.Supp. 1014, 1019 (N.D.Ill.1985); *Melish v. Vogel,* 35 Ill.App.3d 125, 145, 343 N.E.2d 17, 32 (1st Dist.1975); *Sacks v. Helene Curtis Industries, Inc.* 340 Ill.App. 76, 86, 91 N.E.2d 127, 133 (1st Dist.1950). The determination of the scope of presidential authority depends on the facts and circumstances of each case. *Evanston Bank,* 623 F.Supp. at 1032; *see also Clemens v. Sandee Mfg. Co.,* 114 Ill.App.2d 322, 252 N.E.2d 897 (1st Dist.1969); *Mid–Continent Constr. v. Goldberg,* 40 Ill.App.2d 251, 188 N.E.2d 511 (1st Dist.1963); *Sacks,* 340 Ill. App. 76, 91 N.E.2d 127.

As chairman of the board, president, and sole shareholder of Grabill, Stoecker clearly had some authority to bind the corporation, the extent of which cannot be determined from the record at this time. The Trustee argues that use of Grabill's corporate assets to secure three million dollars in personal loans to the corporation's president is not in the ordinary course of business. The Trustee contends that without express authority from its principal, the power of an officer or agent of a corpora-

---

**11.** The Trustee's fourth affirmative defense claims that because Stoecker had no beneficial interest in the Grabill Trust, his assignment of any beneficial interest therein gave nothing to Heritage Bank. Because the matter concerns allegedly improper and voidable transfers of Grabill property, which Stoecker was allegedly empowered to make by Grabill through the hypothecation agreement (Exhibit F), it is difficult to see how this constitutes a separate defense from the fifth affirmative defense. Accordingly, the Court need not further discuss same for purposes of this Opinion. The parties have not separately addressed same in their pleadings.

tion to borrow money is only implied where the borrowing of money is a necessary incident to the performance of the duties within the scope of the officer's or agent's authority. The Trustee states that whether Stoecker's exercise of power was "ordinary" is a question of fact that depends upon the facts and specific circumstances of the business, the officers, and the specific transaction. *See Evanston Bank*, 623 F.Supp. at 1032. *Evanston Bank* also notes that if a third party knows or has reason to know that the agent with whom he is dealing is in fact exceeding his authority, the right to rely on an express grant of authority may be extinguished. Moreover, a third party who knows an agent is faithless and engaged in a fraud on his principal cannot join in the fraud and then claim reliance on the agent's authority. *Id.* at 1032.

The Trustee further argues that if Stoecker did have implied authority to encumber corporate assets, such authority was limited to those encumbrances for the benefit of the corporation. The Trustee contends that Heritage Bank has failed to show that Stoecker had apparent authority to bind Grabill. The Trustee maintains that although apparent authority can be created by appointing a person to a position, Stoecker exceeded any duties as president when he obtained such loans for his own personal use. The Trustee states that no past conduct, statements or course of dealing by the Grabill board of directors could be construed as giving Heritage Bank a reasonable belief that Stoecker had authority to utilize corporate assets to secure personal loans. All these contentions require fact specific determinations which cannot be made from the sparse evidentiary record.

The counterclaim is devoid of any specific allegations of facts that would clearly show which one or more individual employee, agent, officer or director of Heritage Bank possessed actual knowledge of Grabill's financial condition and Stoecker's alleged wrongful use of corporate assets. Heritage Bank's supposed knowledge, rather than fraud, of Stoecker's allegedly wrongful and improper exercise of the powers of direction on Grabill's behalf, is the gravamen of the counterclaim. Under Rule 9(b), such knowledge can be averred generally. The particulars can be obtained through discovery. The Trustee has pleaded a cause of action sufficient to entitle him to offer evidence in support of his remaining counterclaim. Accordingly, Count I of the counterclaim facially states a claim. Thus, the motion to dismiss Count I of the counterclaim is hereby denied.

## V. CONCLUSION

For the foregoing reasons, the Court hereby denies the motion of Heritage Bank for summary judgment and to dismiss. Heritage Bank shall file its answer and any affirmative defenses to Count I of the counterclaim within twenty-one days of the entry hereof. The Final Pretrial Order previously entered herein shall otherwise remain in full force and effect.

*This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.*

See written Order.